**UNITED STATES of America,
Plaintiff–Appellee,**

**v.**

**Leroy MITCHELL,
Defendant–Appellant.**

**No. 88–3266.**

United States Court of Appeals,
Fifth Circuit.

June 26, 1989.

Quentin P. Kelly, Capitalli & Wicker, New Orleans, La., for defendant-appellant.

Patrice Harris, Robert J. Boitmann, Asst. U.S. Attys., John P. Volz, U.S. Atty., New Orleans, La., for plaintiff-appellee.

Before GEE, GARZA and JONES, Circuit Judges.

GEE, Circuit Judge:

In October of 1987 agents from the FBI, New Orleans police department and Louisiana state police contacted the defendant at his place of business and advised him that they had reason to believe that he was in possession of stolen property. The defendant gave the agents permission to search the premises. During the course of the search the agents discovered three stolen Mack trucks. The VIN numbers on the doors of all three vehicles had been removed. In two of the trucks, however, the VIN number was on the frame of the truck. On the third truck the VIN number was missing from the door and the frame.

At the time of the search all three vehicles had license plates on them. In addition, the defendant provided the agents with documents which he claimed were titles for the trucks. The first truck found by the agents was a 1982 Mack truck. The license and title which the defendant produced for that vehicle belonged to a 1972 Mack truck. The defendant's name appears on this title history as the transferee of a 1972 Mack truck. Walter Judlin, the prior owner of the 1972 truck denied transferring the title to the defendant. However, the Notary Public who notarized the transfer stated that the defendant had used his title company to transfer title on the 1972 vehicle from the prior owner to himself.

The second vehicle found by the agent was also a 1982 Mack truck. The license plate on this truck and the title supplied by the defendant belonged to a 1974 Mack truck. The title history showed that this 1974 Mack truck was transferred from Hamilton Miller to the defendant. Miller testified that he had sold the defendant an inoperable 1974 Mack truck. Miller testified that the defendant took the title to the 1974 truck but did not take possession of the truck itself.

The third vehicle found by the agents was a 1978 Mack truck. The license plate on the truck and the title supplied by the defendant belonged to a 1968 truck. The title history indicated that the 1968 truck had been transferred to the defendant from Russell Brown.

At trial the defendant conceded that the trucks were stolen but contended that he was unaware of that fact until informed of it by the FBI. He testified that he bought the trucks from two men for between $2,300 and $2,400, approximately 10–15% of the value of the trucks. This part of the defendant's testimony is consistent with information developed by the FBI. The de-

fendant testified that he knew he got a good deal but didn't suspect the trucks were stolen because the men who sold them indicated that the low price was the result of the fact that the trucks were about to be repossessed. The defendant also testified that he paid for the trucks in installments and the sellers supplied the titles allegedly belonging to the vehicles, all which led him to believe the vehicles were not stolen. Additionally, the defendant testified that he was aware that the door VIN numbers were missing but thought that the doors on the trucks had been exchanged. Finally, the defendant testified that he cannot read and therefore did not know that the titles did not belong to the vehicles in his possession.

In addition to the defendant's testimony, Mr. Brown and Mr. Judlin testified for the defendant. Both denied ever selling a truck to the defendant. Judlin admitted that his signature was on the title history of the 1972 title but testified that he did not sell any vehicle to the defendant and did not know how his signature got on the title history. Brown stated that he sold his truck to two white men. He denied that the signature on the title history was his. The government contended otherwise and submitted a copy of Brown's signature to the jury for their comparison.

Hamilton Miller, the prior owner of the second truck, testified for the government. He testified that he had sold an inoperable 1974 Mack truck to the defendant. He further testified that after the FBI found the vehicles the defendant called him and asked him to tell the FBI that he, Miller, sold the truck to two white men, not to the defendant. It should be noted that the vehicles were all stolen from Mississippi. The titles, allegedly supplied by the two men who sold the vehicles to the defendant, were all from Louisiana and all indicated that the prior owners were associates of the defendant.

On April 5, 1988, the jury returned a verdict of guilty. Sentencing was scheduled to occur on May 25, 1988. The defendant was present at this hearing and observed the presentence report. Sentencing was continued to allow counsel to determine the victim's exact losses. On August 3, 1988, the defendant received two concurrent 18 month sentences followed by five years active probation. In addition the defendant was ordered to pay restitution to the victims. The defendant appeals from his conviction and the restitution order.

### 1. Sufficiency of the Evidence

■ The defendant contends that the evidence in this case is insufficient to support his conviction. The defendant was charged and convicted on three counts of violation of 18 U.S.C. § 2313, possession of a stolen motor vehicle which has crossed state lines after being stolen. To convict a defendant for violation of this statute the government must prove beyond a reasonable doubt that 1) the motor vehicles were stolen; 2) the defendant knew the vehicles were stolen; 3) the defendant possessed, stored, received or concealed the vehicles; and 4) the vehicles crossed state lines after being stolen. The defendant concedes that the government proved elements one, three and four, but challenges the sufficiency of the evidence as to element number two, the defendant's knowledge that the vehicles were stolen.

To determine whether the evidence is sufficient to support a conviction it must be examined in the light most favorable to the government. *Glasser v. United States*, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942). A conviction shall be sustained if there is substantial evidence to support it. *United States v. Brooks*, 786 F.2d 638 (5th Cir.1986).

It is not necessary that the evidence exclude every reasonable hypothesis of innocence or be wholly inconsistent with every conclusion except that of guilt, provided a reasonable trier of fact could find that the evidence establishes guilt beyond a reasonable doubt. A jury is free to choose among reasonable constructions of the evidence. *United States v. Bell*, 678 F.2d 547, 549 (5th Cir.1982). (FN omitted).

■ In this case the defendant contends that the evidence was insufficient to prove

that he knew the vehicles were stolen. "[K]nowledge and intent, because of their nature, must largely be proved by circumstantial evidence. *Johnson v. Wright,* 509 F.2d 828 (5th Cir.1975). (Citations omitted). Further, "an inference of guilty knowledge may be drawn from the fact of unexplained possession of stolen goods." *United States v. Fairchild,* 505 F.2d 1378 (5th Cir.1975).

The defendant argues that he explained his possession of the stolen vehicles when he testified that he purchased them from two white men. The defendant further points out that this testimony was corroborated by the government's witness, Emile Gaudet, an employee of the defendants. According to the defendant, Gaudet's testimony negated the inference of guilty knowledge which could be drawn from the defendant's possession of the stolen vehicles. In support of this argument the defendant cites *United States v. Mann,* 557 F.2d 1211 (5th Cir.1977) in which we stated "that a *defendant's* explanation of his possession of recently stolen goods does not *necessarily* overcome this permissible inference of guilty knowledge, [but] we think that an explanation by a *prosecution* witness does." *Id.* at 1217, note 5.

The defendant's reliance on this case is misplaced. In *Mann* the prosecution's witness not only explained the defendant's possession of the stolen property, he supported the defendant's testimony that he did not know the property was stolen. In this case the prosecution's witness confirmed the defendant's version of how he obtained possession of the vehicles, a version, incidentally, which is not disputed by the government. The prosecution's witness did not, however, support the defendant's claim that he did not know the vehicles were stolen. The jury was free to

conclude that although the defendant did not steal the vehicles, he knew they were stolen.

This conclusion is supported by other evidence in the record. The defendant paid only 10–15% of the value of the vehicles to the sellers. The license and registration provided for the vehicles by the defendant belonged to fictitious trucks whose chains of title led to the defendant from several of his associates. The jury was free to disregard the defendant's testimony that the sellers provided the fictitious titles and conclude that the defendant himself did so, a fact which is consistent with guilty knowledge. There was therefore, sufficient evidence to support the jury's conclusion that the defendant knew the trucks were stolen.[1]

■ The defendant also objects to the charge given to the jury regarding the defendant's explanation of his possession of the property. The defendant did not object to the instruction at the time of the trial, consequently the objection was not preserved for appeal, and will be considered only if it constitutes plain error.

An error in a charge is plain only when, considering the charge and the evidence presented against each defendant, there is a likelihood of a grave miscarriage of justice.

*United States v. Kimmel,* 777 F.2d 290, 294 (5th Cir.), *cert. denied,* 476 U.S. 1104, 106 S.Ct. 1947, 90 L.Ed.2d 357 (1986).

■ The charge to which the defendant objects reads as follows:

Possession of property recently stolen, if not satisfactorily explained, is ordinarily a circumstance from which the jury may reasonably draw the inference and find, in the light of surrounding circumstances showed by the evidence in this case, that

---

1. The defendant makes much of his illiteracy, alleging that because he could not read he did not know the titles did not belong to the vehicles in his possession. Since, however, the jury could have concluded that the defendant supplied the titles; his inability to read is irrelevant. Further, evidence established that the defendant balanced his own checkbook and kept his own bank account, indicating that he could read numbers. Since the year of the vehicles on the titles did not match the vehicles in the defendant's possession, the jury could have inferred that the defendant knew the titles were fictitious even if he did not provide them.

the person in possession knew the property had been stolen.

It is the exclusive province of the jury to determine whether the facts and circumstances shown by the evidence in this case warrant any inference which the law permits you to draw from the possession of recently-stolen property. If you believe that the *accused's* explanation of possession of recently stolen property *is consistent with innocence,* you must acquit the accused. (Emphasis added by defendant).

According to the defendant, this charge was misleading in two respects. First, the defendant complains that the charge focused the jury's attention only on the accused's explanation as to how he acquired the property, not the government witnesses' explanation. As noted above, however, the means by which the defendant acquired the property was not in dispute. The government conceded that the defendant purchased the trucks from two other individuals. Therefore, the fact that the charge did not mention explanations given by individuals other than the defendant would not have resulted in a miscarriage of justice.

The defendant also objects to the fact that the charge stated that the jury must acquit the defendant if his explanation was "consistent with innocence." According to the defendant the charge should have required acquittal if the defendant's explanation was "in some way consistent with ... innocence." We fail to see any real distinction between the two charges. Assuming, however, that there is some distinction in the charge, the evidence against the defendant is such that this charge would not have resulted in a miscarriage of justice. Consequently, there is no plain error. The defendant's conviction should, therefore, be affirmed.

## 2. *Restitution*

As a part of his sentence the defendant was ordered to pay restitution to the victims of the theft. 18 U.S.C. §§ 3663 and 3664 give the courts the authority to require restitution in certain circumstances. § 3663 of this statute states in relevant part:

(b) The order may require that such defendant—

(1) In the case of an offense resulting in damage to or loss or destruction of property of a victim of the offense—

(A) Return the property to the owner of the property or someone designated by the owner, or

(B) If return of the property under subparagraph (A) is impossible, impractical, or inadequate, pay an amount equal to the greater of—

(i) the value of the property on the date of the damage, loss, or destruction, or

(ii) the value of the property on the date of the sentencing,

less the value (as of the date the property is returned) of any part of the property that is returned;

Section 3664 states, in pertinent part:

(a) The court, in determining whether to order restitution under § 3579 of this title [which has been repealed and replaced by § 3663] and the amount of restitution, shall consider the amount of the loss sustained by any victim as a result of the offense, the financial resources of the defendant, the financial needs and earning ability of the defendant and the defendant's dependents, and such other factors as the Court deems appropriate.

The defendant objects to the order of restitution on three grounds. First, he contends that the court failed to consider the victim's actual damages in ordering restitution. Second, he contends that the court erred in awarding damages for lost income resulting from the theft of the truck. Third, he contends that the court miscalculated the amount of damage because the victims had been compensated for their losses by their insurance companies.

■ The defendant's first contention is without merit: § 3663(a)(2) states that "[i]f the court does not order restitution, or orders only partial restitution ... the court shall state on the record the reasons therefore." The statute does not require that the court state its reasons if full restitution is ordered. Further, as we stated in *United States v. Patterson*, 837 F.2d 182, 183–184 (5th Cir.1988):

> We are not persuaded that the district court must spread its findings and conclusions on the record in every case in which full restitution is ordered. The decision to assign reasons is committed to the sound discretion of the district court, guided by this singular inquiry—absent an assignment of its reasons, does the record contain sufficient data for the appellate court to perform its mandated review? If the record provides an adequate basis for that review, the court need not assign specific reasons for its decision to order full restitution. If the record is insufficient, reasons must be assigned.

In this case the presentence report, which is a part of the record, sets forth the specific findings as to each victim's damages. Under these circumstances the court need not make those findings on the record.

■ The defendant also contends that the district court erred in awarding damages for lost income resulting from the theft of the truck. The defendant contends that restitution for lost income is appropriate only in the case of offenses resulting from bodily injury to the victim. 18 U.S.C. § 3663(b)(1), cited above, sets forth the restitution that may be ordered for crimes resulting in "damage to or loss or destruction of property." This section contains no authority to order restitution for lost income. Section 3663(b)(2), by contrast, does authorize restitution to "reimburse the victim for income lost." This section, however, applies only "in the case of an offense resulting in bodily injury to a victim."

The government argues that the § 3663 merely provides "an illustrative list of what the court may choose to order when it is determined that restitution is appropriate in any given case." The government argues that the term "may" as used in § 3663(b) ("the court *may* require that the defendant ...") is permissive as to what the court may require. In support of this argument the government also notes that § 3663(d) states that an order of restitution should be "as fair as possible to the victim." Finally, the government notes that the purpose of the Act, i.e., doing all possible to assist victims would be thwarted by denying lost compensation.

This argument is unpersuasive. The term "may" as used in § 3663(b) is permissive as to whether the court may require restitution, not as to what it may require in the way of restitution. Further, the fact that the goals of the Act may be thwarted by denying lost income restitution does not authorize us to ignore the plain language of the statute. Congress is clearly capable of authorizing restitution for lost income when it chooses to do so. *See* 18 U.S.C. § 3663(b)(2). Despite this fact, it has not included lost income in the type of restitution that may be ordered in property cases and, unless and until it amends the statute to include lost income, courts may not order such restitution in property cases.

■ Finally the defendant contends that the district court miscalculated the amount of restitution due each of the victims because it failed to take into account the fact that the victims were reimbursed for their losses by their insurance companies. Section 3663(e)(1) of the Act prohibits the court from imposing restitution "with respect to a loss for which the victim has received compensation." The district court ordered restitution in the following amounts: Ms. Catherine Bond—$29,868.47; Mr. W.C. Pitts—$33,850, and Mr. Richard Johnston—$9,298.49. The presentence report calculated the victim's losses as follows:

CATHERINE BOND

| | | | |
|---|---|---|---|
| Value of truck at time of theft (No reimbursement from insurance—liability insurance only). | | $45,000 | |
| Value of truck when it was returned. | | 25,000 Loss | $20,000.00 |
| Amount of Lost Income for 2 months without truck. | | | 6,600.00 |
| Cost to restore truck to working condition after it was returned. | | | 3,268.47 |
| | | TOTAL LOSS | $29,868.47 |

W.C. PITTS

| | | |
|---|---|---|
| Value of truck at time of theft (Received reimbursement from insurance company.) | $35,000 | $33,850.00 |
| Amount of Lost Income (Truck earned $500 per day—92 days at $500 per day = $46,000 less labor, fuel and overhead of $12,150 = $33,850. | | |
| | TOTAL LOSS | $33,850.00 |

RICHARD JOHNSTON

| | | |
|---|---|---|
| Value of truck at time of theft (Received reimbursement from insurance company.) | 30,000 | |
| Loss of earnings and cost of leasing truck until reimbursement was made by insurance company. | | ~~$44,019.51~~ |
| Attorney Fees—(Mr. Johnston was forced to hire an attorney to collect for stolen truck from insurance company.) | | 520.00 |
| | TOTAL LOSS | ~~$44,539.51~~ |
| | | $ 9,298.49 |

It is clear from those calculations that the court did not order the defendant to pay restitution for losses for which the victims had been reimbursed. Nonetheless, the defendant's assertion that the district court erred in calculating the amount of restitution is correct. Section 3663(b)(1) limits restitution in property cases to return of the property or, if that is inadequate, to the value of the property when stolen less its value when returned. There is no provision authorizing restitution for lost income, cost of restoring property to its pre-theft condition, or cost of employing counsel to recover from an insurance company. Consequently, the award of restitution for those losses is improper. It is also impossible to determine for what losses Mr. Johnston received restitution. Consequently, we remand this case to the district court to allow the court to recalculate the amount of restitution due each of the victims. In so doing, we remind the court that 18 U.S.C. § 3663(e)(1) permits the court to award restitution to the insurance companies who compensated Mr. Pitts and Mr. Johnston for their losses. We also remind the district court that if it chooses not to award full restitution, including restitution to the insurance compa-

nies, it must state on the record its reasons for doing so.

The defendant's conviction is AFFIRMED, but its sentence of restitution is vacated and the case is REMANDED to the district court for recalculation of the award of restitution.