UNITED STATES of America, Plaintiff–Appellee,

v.

Allen Ray SHARP, Defendant–Appellant.

UNITED STATES of America, Plaintiff–Appellant,

v.

Danny Howard FOUT, Defendant–Appellant.

Nos. 90–5491, 90–5492.

United States Court of Appeals, Fourth Circuit.

Argued Dec. 7, 1990.

Decided March 4, 1991.

John Joseph Cowan, Charleston, W.Va., argued (Jerome J. McFadden, Gibson, McFadden & Ash, Princeton, W.Va., on brief), for defendants-appellants.

Dwane Lamont Tinsley, Asst. U.S. Atty., argued (Michael W. Carey, U.S. Atty., Charleston, W.Va., on brief), for plaintiff-appellee.

Before ERVIN, Chief Judge, NIEMEYER, Circuit Judge, and MERHIGE, Senior United States District Judge for the Eastern District of Virginia, sitting by designation.

ERVIN, Chief Judge:

Danny Howard Fout and Allen Ray Sharp were convicted of causing property damage by use of explosives and conspiracy in connection with the bombing of a coal mine. Both appealed their sentences, contending that they were denied reductions or departures to which they were entitled. In addition, each appealed from an order of restitution entered by the court, on the ground that the order was entered in violation of 18 U.S.C. § 3663. We affirm the sentences of both defendants except that portion relating to the order of restitution. We reverse the restitution and vacate the order of the district court, so that the district court may reconsider that issue in light of this opinion.

I.

This case began with a dispute between coal miners and the mine where they used to work. Nine former miners conspired to bomb the mine. They had previously worked at the mine as union members, but had gone on strike in October 1984. In May 1989, the mine was leased to Mountain Minerals after having been idle for 5 years. Mountain Minerals hired non-union miners to work there. The union members' strike continued.

On June 21, 1989, a homemade pipe-bomb was set off at the entrance to the mine site. On July 12, 1989, a fire was set which destroyed the Milburn Colliery tipple and processing plant. On September 22, 1989, a second bomb was placed under the mine's

exhaust ventilation fan near an entrance to the mine; the bomb exploded, destroying the fan and damaging the mine. In addition, another bomb device was placed on a power pole near the power transformers of the mine; it did not detonate. No persons were injured as a result of the above occurrences.

The Bureau of Alcohol, Tobacco and Firearms ("ATF") began an investigation which led to Danny Fout. Fout's house was searched pursuant to a warrant. The agents found: an illegal 12 gauge single barrel shotgun and a 14.223 caliber rifle which had been converted to a fully automatic weapon; marijuana plants; and material used to make "jack-rocks" for mine-related strike activities. Fout was given *Miranda* warnings and was taken to the ATF office. Fout was not represented by counsel at this time. He met with the United States Attorney and an Assistant United States Attorney to discuss a possible plea agreement, still unrepresented by counsel. Fout was told that if he cooperated with the government, including wearing a body wire to implicate others in the conspiracy, the government would help him with the guidelines.

There is disputed testimony over exactly what Fout was promised. He says that the United States attorneys and agents told him that (1) they would help him to lessen the guidelines; (2) they would help him in every way possible if he cooperated; and (3) that he would be better off than any of the group. The government agents testified that they never made a specific promise that the government would make a motion for substantial assistance.

Fout signed a standard plea agreement form.[1] He then wore a body wire on three separate occasions to help the government obtain evidence against his co-conspirators. At about the same time, an attorney was appointed for Fout. The attorney was informed by the government of its intent to file a motion for substantial assistance for Fout.

On the morning of the sentencing hearing, the government told Fout's counsel that it would not file a motion for substantial assistance. Apparently the government was displeased with Fout because of his failure to tell them that he had placed a bomb in the tipple which was the subject of an arson case. Fout was testifying in that case against Larry Massey, who was accused of setting the tipple on fire. The government was concerned about last minute surprises concerning Fout's testimony and repeatedly asked him if he had told them everything about his involvement. He said that he had. However, the government later learned from another source that Fout had placed a bomb in the same tipple. Confronted with this evidence shortly before trial, Fout conceded that he had done so.

Allen Sharp attended several meetings where discussions were held about bombing the mine. Sharp drove the conspirators to the mine on the night of a failed attempt to bomb the mine, as well as on September 21, 1989, when the group bombed the ventilation fan. Sharp and his son waited in the truck for the conspirators to set the explosives, and then drove the conspirators back to their place of meeting. The bomb in the fan exploded at 4:30 a.m.; another bomb failed to detonate.

Fout and Sharp were charged in a multiple count indictment. Both were charged in Count One with conspiracy in violation of 18 U.S.C. § 371. The underlying offenses were violations of: 18 U.S.C.

---

1. The plea agreement provided that Fout would plead guilty to certain charges in exchange for other charges against him being dropped. The agreement further provided that Fout would be completely forthright and truthful and that he would give "signed, sworn statements, grand jury testimony and trial testimony relative thereto" and that he would be granted immunity with respect to any charges relating to those statements. The agreement further provided that the agreement represented the "entire agreement between [Fout] and the United States in this matter." Finally, the government agreed that it would "advise the Court of the nature and extent of [Fout's] forthrightness and truthfulness, or failure to be forthright and truthful, and ask the Court to give same weight as the Court deems appropriate." Both parties expressly acknowledged that the matter of sentencing was within the sole discretion of the court.

§ 844(i) (property damage by use of explosives); 18 U.S.C. § 1366 (destruction of an energy facility); and 26 U.S.C. §§ 5861(d) and (f) (receiving and possessing an illegal firearm and making an illegal firearm). Both were charged in Count Two with violating 18 U.S.C. §§ 844(i) and (h)(2).

Both Fout and Sharp entered pleas of guilty. Each was ordered to pay restitution in the amount of $112,058.40 and $100 in fines.[2] The amount of restitution included: the replacement cost of a ventilation fan, the cost of supplies to repair the mine, payroll for workers who did the repairs including taxes on the payroll, and loss of income. Fout and Sharp appealed the inclusion of the loss of income as not allowed under 18 U.S.C. § 3663(b).

At Fout's sentencing hearing, the government made no written motion for substantial assistance. Although a writing is not required for such a motion, in the district in question, the practice of the government when making such a motion was to make a *written* motion. Thus, the district court did not rule on a motion for substantial assistance because it did not believe it was presented with one.

Fout filed a motion to reconsider and correct sentence. A hearing was held on May 7, 1990. There, the district court denied Fout's motion. The court stated its reasons as follows:

> The Government did not make a written motion for substantial assistance at the disposition of this matter and the court did not depart from the applicable guideline range. The Defendant asks this Court in the instant motion to resentence the Defendant on the basis of his substantial assistance to the Government.
>
> The Government must make a motion for substantial assistance in order for the Court to depart for that reason. § 5K1.1 of the Sentencing Guidelines. The evidence is clear that the Government has not and will not make such a motion.... The plain meaning of § 5K1.1 is that this court does not have jurisdiction to downwardly depart from the guidelines absent a motion for substantial assistance.

Fout appealed his sentence.

At sentencing, Sharp asked for a reduction in his base offense level under § 3B1.2 of the Sentencing Guidelines based on his minimal or minor role in the bombings. The district court found that Sharp was not a minimal or minor participant and did not adjust his base level. Sharp appealed this determination.

## II.

Three issues are presented on this appeal. First, whether the district court erred in including loss of income in the order of restitution. Second, whether the district court erred by not granting a motion for substantial assistance for Fout. Third, whether the district court erred in finding that Sharp was not a minor or minimal participant in the bombings. We address each issue in turn.

## A.

The district court imposed restitution upon all nine defendants involved in the bombings under the Victim and Witness Protection Act of 1982, 18 U.S.C. § 3663 ("V.W.P.A."). The court imposed restitution in the amount of $112,058.40. This amount included: the replacement cost of the ventilation fan ($30,000); the cost of supplies for repairs of the mine ($12,303.95); payroll of miners who performed repairs on the mine ($36,080); taxes on the payroll ($4,874.41); and loss of income ($28,200).

Section 3663(b) of the V.W.P.A. provides for the types of restitution that may be given for offenses which result in "damage to or loss or destruction of property of a victim of the offense." 18 U.S.C. § 3663(b). The court can require the defendant to return the property. *Id.* If return of the property is impossible, the court may require the defendant to pay an amount equal to the greater of: (1) the

---

**2.** The district court ordered restitution for all nine co-defendants involved in the bombings of the mine in the aggregate amount of $112,- 058.40. The restitution was to be divided equally among the nine co-defendants.

value of the property on the date of the damage; or (2) the value of the property on the date of sentencing. *Id.* Section 3663(b) does not provide for the recovery of lost profits.

Section 3663(a) does provide for lost income; however, this section only applies in the "case of an offense resulting in bodily injury to a victim." 18 U.S.C. § 3663(a). There were no bodily injuries in this case; therefore, it appears that the granting of restitution for lost income was improper under the statute.

In *United States v. Mitchell,* 876 F.2d 1178 (5th Cir.1989), the Fifth Circuit held that restitution for lost income could not be awarded under 3663(a). There the defendant was in the possession of stolen trucks. The court ordered restitution, including lost income. The Fifth Circuit remanded the case based on the following rationale:

> Congress is clearly capable of authorizing restitution for lost income when it chooses to do so. *See* 18 U.S.C. § 3663(b)(2). Despite this fact, it has not included lost income in the type of restitution that may be ordered in property cases and, unless and until it amends the statute to include lost income, courts may not order such restitution in property cases.

*Id.* at 1183. Because the court could not determine from the record exactly what amount of the restitution was improper, the court remanded to the district court to recalculate. *Id.* at 1184.

The *Mitchell* case is instructive. Based on the plain language of the statute, the district court should not have included lost income in the calculation of restitution. Therefore, we remand the case to the district court for a recalculation of restitution in light of the foregoing.

■ Fout and Sharp also argue that the inclusion of the cost of repairs was improper. We disagree. The language of the statute provides that the defendant must pay an amount equal to the value of the property on the date of the damage. Defendants assert that the value of the property was $30,000, which represents the replacement cost of the fan. This value,

however, fails to take into account the fact that the fan that was damaged had been installed as part of the mine property. Moreover, other parts of the mine property, including the mine itself, were damaged. The district court properly took into account the entire amount of damage to all the property injured as a result of the bombing. Therefore, the inclusion of repair costs was not error.

On remand, the district court should pay particular attention to our holding in *United States v. Bruchey,* 810 F.2d 456 (4th Cir.1989). There, we stated that "we join those courts which have invoked their supervisory power to require district courts to make specific fact findings on those matters relevant to application of the V.W. P.A." *United States v. Bruchey,* 810 F.2d 456, 458 (4th Cir.1987). Appellate review of restitution is difficult unless the trial court makes explicit findings of fact. *Id.* We explained the necessity of such findings in *Bruchey:*

> The V.W.P.A. implicitly requires the district judge to balance the victim's interest in compensation against the financial resources and circumstances of the defendant—all while remaining faithful to the usual rehabilitative, deterrent, retributive and restrictive goals of criminal sentencing.... The trial court should also make clear findings of fact on the defendant's resources, and the financial needs and earning ability of the defendant and the defendant's dependents. Such findings of fact should be keyed to the specific type and amount of restitution ordered.

*Id.* at 458–59. Because the district court had not made such specific findings of fact in *Bruchey,* we remanded to the district court to make those findings.

In this case, the district court imposed the exact amount of restitution on each of the nine defendants, with little discussion. The court made no specific findings regarding either Fout's or Sharp's abilities to pay. That there may be reason to be concerned about their ability to pay is evident from the court's stated reason for not imposing other fines upon them: "The Court has

imposed no fine which is outside the guideline range because the defendant does not have the financial ability to pay a fine in light of the Court's order of restitution." On remand, the district court should make the findings of fact required by *Bruchey* on an individualized basis, balancing the victim's interest in compensation against the defendant's ability to pay.

### B.

█ The second issue before us concerns a motion for substantial assistance. Fout alleges that the district court erred by not granting him a reduction under § 5K1.1 of the Sentencing Guidelines for his substantial assistance. *See* United States Sentencing Commission, *Guidelines Manual*, § 5K1.1 (Nov.1989) (hereinafter U.S.S.G.). Section 5K1.1 provides:

> Upon motion of the government stating that the defendant has provided substantial assistance in the investigation or prosecution of another person who has committed an offense, the court may depart from the guidelines.

This court has held that the district court may not consider a departure under § 5K1.1 unless the government has made a motion:

> The language of this section is clear and unequivocal that consideration of such a departure must begin with a motion of the government. There may be no consideration by the court of the defendant's assistance until the necessary motion has been made by the government. When the motion is made by the government, the district judge must determine whether a downward departure is warranted, and the section sets forth various circumstances that may be considered by the court in ruling upon such a motion.... [The defendant] cannot escape the clear import of the requirement that the government must initiate any departure from the Guidelines by filing a motion with the court.

*United States v. Francois*, 889 F.2d 1341, 1343–44 (4th Cir.1989), *cert. denied,* —— U.S. ——, 110 S.Ct. 1822, 108 L.Ed.2d 951 (1990). In the present case, the government did not make a motion for substantial assistance. Therefore, under the plain language of the guidelines and our holding in *Francois*, the district court correctly refused to grant defendant's request for a downward departure.[3] While we hold that no downward departure was warranted in this case, the facts give us cause for concern.

The government's agents *and attorneys* dealt with an unrepresented and, at the time, uncharged man. They made representations to him. It is unclear exactly what those representations were. It has been established that they did not specifically say that they would make a "motion to depart" at the time of the plea arrangement. However, a layperson's understanding of "doing all we can with the guidelines" could easily encompass such a promise. In reliance upon those representations, Fout cooperated with the government, wearing a body wire, testifying in proceedings against his co-conspirators, and risking the ire of the union members he had betrayed.

We do not suggest that this is a case like *Santobello v. New York*, 404 U.S. 257, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971), in which the government made a specific promise and then reneged. This is, however, one of several cases from this district in which similar problems have arisen, and we voice our concern about what appears to be a practice of making unclear oral statements to unrepresented criminal defendants which they may misinterpret as promises upon which they can rely.

### C.

█ The third issue before us is whether the district court erred because it did not decrease Sharp's sentence pursuant to § 3B1.2 of the U.S.S.G. We review the court's decision under the clearly erroneous

---

**3.** In a recent unpublished opinion, this court vacated a sentence and remanded the case to the district court because the district court had made a downward departure under § 5K1.1 without a motion by the government. *United States v. Kelly,* 905 F.2d 1532 (4th Cir.1990).

standard. *United States v. Daughtrey,* 874 F.2d 213, 218 (4th Cir.1989); *United States v. White,* 875 F.2d 427, 434 (4th Cir.1989). Sharp claims that he is less culpable than the other conspirators because he merely drove them to the site and did not actually place any explosives or take a leadership role in any of the meetings. Sharp claims that he should receive a reduction because Thomas, another conspirator, received a reduction under § 3B1.2. Thomas went with Sharp on the failed mission and waited with Sharp for the rest of the conspirators to return. However, when the conspirators went back and actually set the bomb which exploded in the fan, Sharp drove them back; Thomas did not go on that trip. This factual difference is significant. Thomas took no part in the actual bombing on the night it occurred. Sharp did.

The district court found that Sharp was a key part of the conspiracy:

> He was the man that waited at the bottom of the hill to take them back after they had done what they were, what they went up there and intended to do. He transported the dynamite. I cannot describe that as minimal participation. He did it with full knowledge, premeditation, and an understanding in his instance particularly of what, just what explosives can do. So, I cannot agree with you in requesting that four-point reduction.

We cannot say that such a ruling was clearly erroneous. In cases where defendants have claimed a minor or minimal role because they were only drivers, the courts have upheld trial court's refusals to grant reductions based on the status as driver. *See United States v. Moreno,* 899 F.2d 465, 471 (6th Cir.1990) (holding that as a driver, the defendant knew as much as the other players and was not entitled to a minor or minimal role reduction); *United States v. Velasquez,* 890 F.2d 717, 720 (5th Cir.1989) (holding that a driver on a drug pick-up was not substantially less culpable, justifying a minimal or minor participant adjustment).

When a defendant seeks a mitigating adjustment under § 3B1.2, he has the burden of convincing the district court of its application by a preponderance of the evidence. *United States v. Gordon,* 895 F.2d 932, 935 (4th Cir.1990), *cert. denied,* — U.S. —, 111 S.Ct. 131, 112 L.Ed.2d 98 (1990). Sharp has not carried his burden. Here, looking at the evidence in the most favorable light possible regarding Sharp's behavior, the most he can show "is that the record admitted of more than one conclusion on the matter; and under the applicable standard of review, we therefore must reject his challenge to the district court's refusal to find him a minimal or minor participant." *United States v. McCrary,* 887 F.2d 485, 488 (4th Cir.1989).

### III.

In conclusion, we hold that the district court incorrectly included loss of income in the calculation of restitution. Therefore, we remand the case to the district court for recalculation of the restitution amount. We hold that the district court correctly declined to depart downward for substantial assistance when sentencing Fout, and we affirm his sentence. Finally, we hold that the district court's finding that Sharp was not a minor or minimal participant was not clearly erroneous. Therefore, we affirm the sentence imposed upon Sharp.

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.