993 F.2d 229
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Cedric BLANCHETTEC, a/k/a Cedric T. Blanchette, a/k/a Cedric
Troy Blanchettee, a/k/a Cedric Blanchette, a/k/a Cedric
Troy, a/k/a Darren Wall, a/k/a Uptown, a/k/a Troy, a/k/a
Cedric Troy Blanhette, a/k/a Troy Blanchette, Defendant-Appellant.
 No. 92-5678.
 United States Court of Appeals,
Fourth Circuit.
 Argued: April 1, 1993
Decided: May 7, 1993
 
 Appeal from the United States District Court for the Eastern District of Virginia, at Newport News. Henry C. Morgan, Jr., District Judge. (CR-92-27-NN)
 Charles E. Haden, Hampton, Virginia, for Appellant.
 Donald Campbell Lockhart, Special Assistant United States Attorney, Alexandria, Virginia, for Appellee.
 Richard Cullen, United States Attorney, Alexandria, Virginia, for Appellee.
 E.D.Va.
 AFFIRMED.
 Before PHILLIPS, LUTTIG, and HAMILTON, Circuit Judges.
 PER CURIAM:
 
 OPINION
 
 1
 Appellant Cedric Blanchettec appeals his conviction for conspiracy to possess with intent to distribute and to distribute cocaine base (crack) in violation of 21 U.S.C. §§ 841(a)(1) and 846, and his conviction for conspiracy to make a false statement to a firearms dealer in violation of 18 U.S.C. § 371. Blanchettec also appeals his sentence. Finding no error, we affirm.
 
 
 2
 * We briefly outline the facts of this appeal in the light most favorable to the government. United States v. Tresvant, 677 F.2d 1018 (4th Cir. 1982); Jackson v. Virginia, 443 U.S. 307, 319 (1979). In the fall of 1991, Trevor Brown organized a multilayered drug conspiracy in Newport News, Virginia, that continued in operation until March 1992. Brown purchased crack from sources in New York and distributed the drugs in Newport News through an extensive network that included Blanchettec and numerous other individuals. An individual identified as "Mike" ran the day-to-day drug distribution operation. Kevin MacFarlane, also known as "H2O" and"O," was Mike's chief lieutenant. Blanchettec was considered a "corporal" in the organization, responsible at times for distributing crack to street dealers and collecting money.
 
 
 3
 Blanchettec's role in the crack conspiracy was described by numerous other members of the conspiracy. Leroy Smith, a street dealer, testified he was instructed by Mike and MacFarlane to turn over the proceeds of his drug sales to Blanchettec and did so on approximately twenty to thirty occasions. Another street dealer, David Greene, described Blanchettec's role in the organization:
 
 
 4
 Troy [Blanchettec] would redistribute drugs to the street dealers and collect money.... When ... street dealers would run out of drugs, he would give them more to keep the flow of money coming in.... [I]f Troy ran out, Mike and H2O would give him-they would go to the spot, come back with a bag of drugs and give him more drugs to sell.... I sat there and watched Mike and H2O put the drugs in Troy's hands ... watched them give him drugs and he would redistribute it on the street.
 
 
 5
 Joint Appendix (J.A.) at 254-55. DaMarcus Cauldwel testified Blanchettec asked him to store a safe for him in his apartment and MacFarlane asked him to hide a .9 millimeter Ruger gun there as well. Cauldwel complied and received $50 in return from Blanchettec. The safe was later discovered to contain 4.6 grams of crack.
 
 
 6
 Brown, Mike, and MacFarlane were also in the business of obtaining firearms in order to exchange those firearms in New York for crack they later distributed in Newport News. Greene testified that he purchased guns for Mike and MacFarlane and he falsely stated on a Bureau of Alcohol Tobacco and Firearms (BATF) Form 4473 filed with licensed firearms dealers that he was the transferee of the guns.* Greene also testified he received crack in exchange for purchasing the firearms. Greene further testified that one of the arrangements to purchase guns was made in the presence of Blanchettec. Finally, Greene testified that Blanchettec was present on two trips to a gun store, remaining in the car on one trip and entering the store on the other.
 
 
 7
 In March 1992, with the cooperation of Leroy Smith, Agent Moore began to investigate the activities of Mike, MacFarlane, and Blanchettec. Smith agreed to set up an encounter between Agent Moore and other members of the conspiracy. On March 13, 1992, Agent Moore, in an undercover capacity, and Smith drove to a nearby 7-11 store. There they met briefly with MacFarlane and Blanchettec. Blanchettec asked Agent Moore how much it would cost to obtain a"three-fiveseven" and a ".9 millimeter." J.A. at 84-85. Agent Moore responded that the price varied from store-to-store. Agent Moore asked Blanchettec and MacFarlane how much they would pay him. Blanchettec responded "forty," which Moore understood to mean $40 for the purchase of two firearms. Mike later joined the group and told Agent Moore and Smith to meet with Blanchettec and MacFarlane the following day.
 
 
 8
 The following day, Agent Moore and Smith met with MacFarlane, Blanchettec, and Cauldwel in an area near the Peninsula Pawn Shop. Greene was also in the vicinity of the pawn shop. Agent Moore asked Blanchettec if the group planned on purchasing firearms. Blanchettec responded: "We might do that." J.A. at 141. Blanchettec then asked Agent Moore if he could get a "3-5-7" and what it would cost. Agent Moore suggested that he could buy one for them at a local firearms store, the Gun Box. MacFarlane and Greene then proceeded to the Gun Box, where Greene purchased a Rossi .357 revolver and three varieties of ammunition. Greene completed the BATF Form 4473, falsely stating he was the transferee of the revolver. MacFarlane and Greene then returned to the area near the Peninsula Pawn Shop. At that time, Smith, MacFarlane, Blanchettec, and Greene entered the Peninsula Pawn Shop. There, the group purchased a .357 pistol. Upon exiting the pawn shop, Blanchettec, among others, was arrested.
 
 
 9
 In June 1992, a grand jury returned a three-count indictment charging Blanchettec with conspiracy to possess with intent to distribute and to distribute crack, 21 U.S.C. §§ 841(a)(1) and 846 (count one), conspiracy to make a false statement to a firearms dealer, 18 U.S.C. § 371 (count two), and possession of a firearm by a convicted felon, 18 U.S.C. § 922(g)(1). After a five-day trial, the jury convicted Blanchettec of counts one and two of the indictment, and acquitted him of count three. The district court sentenced Blanchettec to 156 months' imprisonment. Blanchettec appeals.
 
 II
 
 10
 Blanchettec raises a whole litany of assignments of error, only a few of which merit brief discussion.
 
 
 11
 * Blanchettec challenges the sufficiency of the evidence supporting his conviction for conspiracy to possess with intent to distribute and to distribute crack, 21 U.S.C. §§ 841(a)(1) and 846, and the evidence supporting his conviction for conspiracy to make a false statement to a firearms dealer, 18 U.S.C. § 371.
 
 
 12
 The elements of the crime of conspiracy are: "(1) an agreement between two or more persons ..., (2) to commit in concert an unlawful act." United States v. Giunta, 925 F.2d 758, 764 (4th Cir. 1991). In order to uphold Blanchettec's convictions, the evidence in the light most favorable to the government must demonstrate that Blanchettec knew of the conspiracy and its purpose, and participated in some manner. United States v. Crockett, 813 F.2d 1310, 1316 (4th Cir.), cert. denied, 484 U.S. 834 (1987). With respect to the conspiracy to possess with intent to distribute and to distribute crack, the government need not prove the commission of an overt act. United States v. Mabry, (4th Cir. 1991) (citing United States v. Goldman, 750 F.2d 1221, 1226 (4th Cir. 1984)). However, with respect to an 18 U.S.C. § 371 conspiracy, the government carries the additional burden of proving an overt act in furtherance of the conspiracy. United States v. Chorman, 910 F.2d 102, 109 (4th Cir. 1990) (citing United States v. Reifsteck, 841 F.2d 701, 704 (6th Cir. 1988)). In proving the existence of a conspiracy and defendant's participation in it, the government may resort to circumstantial evidence. Guinta, 925 F.2d at 764. Nevertheless, evidence that merely proves an association between two persons, even if one knows the other intends to commit a crime, is insufficient to support the inference that the two people agreed to commit an unlawful act.
 
 
 13
 Blanchettec contends the evidence produced by the government only demonstrates that he was merely a lookout and unaware of the existence of a conspiracy to possess with intent to distribute and to distribute crack. The record belies this assertion. The government's evidence at trial demonstrated that Blanchettec's role in the drug distribution organization was at times a lookout, a distributor of crack, a recipient of crack from Mike and MacFarlane, a storer of crack, a money collector, and an intermediary between buyers and sellers. In light of this evidence, the record amply supports Blanchettec's conviction on count one. Jackson, 443 U.S. at 319; Fed. R. Crim. Proc. 29.
 
 
 14
 Turning to the evidence supporting Blanchettec's conviction for conspiracy to make false statements to a firearms dealer, our review of the record compels us to conclude that the evidence was more than sufficient. There was ample evidence establishing that Brown, Mike, MacFarlane, Blanchettec, Greene, and Smith conspired to illegally obtain firearms by making false statements to firearms dealers. We need look no further than to the circumstances surrounding Greene's purchases of firearms in which Blanchettec was present and Blanchettec's encounters with Agent Moore on March 13 and 14 for ample evidence that Blanchettec actively participated in the conspiracy to make a false statement to a firearms dealer. Accordingly, Blanchettec's conviction on count two must be affirmed. Jackson, 443 U.S. at 319; Fed. R. Crim. Proc. 29.
 
 B
 
 15
 Blanchettec argues that the district court erred in not reducing his offense level for his role in the offense. U.S.S.G.s 3B1.2 provides for a reduction of a defendant's offense level in the following circumstances:
 
 
 16
 (a) If the defendant was a minimal participant in any criminal activity, decrease by 4 levels.
 
 
 17
 (b) If the defendant was a minor participant in any criminal activity, decrease by 2 levels.
 
 
 18
 In cases falling between (a) and (b), decrease by 3 levels.
 
 
 19
 We review the district court's finding under the clearly erroneous standard. United States v. Sharp, 927 F.2d 170, 175 (4th Cir. 1991) (citations omitted). In refusing the reduction, the district court stated:
 
 
 20
 The fact that the defendant was not at a higher level in the conspiracy doesn't translate to the Court into a finding that he was either a minimal participant or minor participant. He seemed to be participating throughout the conspiracy, albeit at a low level, but ... I don't believe the fact that he was at a low level means that he was a minor or minimal participant because it seems that he was always participating but just had limited duties; that's all. So I don't believe his participation would qualify him either for a 4-level or 3-level decrease and the Court so finds.
 
 
 21
 J.A. at 549. The evidence in this case demonstrated that Blanchettec was actively involved in the day-to-day operation of the crack conspiracy. Although Blanchettec at times was a mere lookout, at other times he distributed crack to street dealers and collected money from the street dealers as well. Over the course of the conspiracy, Blanchettec provided substantial and regular assistance to his coconspirators. We cannot say that the district court's decision to deny Blanchettec a reduction under U.S.S.G. § 3B1.2 for his role in the offense was clearly erroneous. See United States v. Brooks, 957 F.2d 1138, 1149 (4th Cir. 1992) ("[D]istrict court did not clearly err in concluding that as a seller-if not as a lookout-Brooks was not occupying a 'minor' role entitling him to a decrease in offense level.").
 
 III
 
 22
 We have reviewed Blanchettec's remaining assignments of error and find them to be without merit. Accordingly, for the reasons stated herein, Blanchettec's convictions and sentence are affirmed.
 
 AFFIRMED
 
 
 *
 Special Agent Michael Moore of the BATF testified that a Form 4473 "is a form that you fill out when you attempt to purchase a firearm. It asks personal data, your name, place of birth, height, weight, and your current residence, and it also asks a few other questions, like 'Are you a convicted felon?' and questions like 'Are you a citizen of the U.S.A.?' " J.A. at 122-23