**UNPUBLISHED**

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,
*Plaintiff-Appellee,*

v.

GORDON FRANKLIN SPROUSE, II,
*Defendant-Appellant.*

No. 02-4329

Appeal from the United States District Court
for the Western District of Virginia, at Harrisonburg.
James H. Michael, Jr., Senior District Judge.
(CR-01-30051)

Submitted: January 31, 2003

Decided: February 21, 2003

Before WILKINS, Chief Judge, and WILKINSON and
NIEMEYER, Circuit Judges.

---

Affirmed in part, vacated in part, and remanded by unpublished per
curiam opinion.

---

**COUNSEL**

David B. Smith, ENGLISH & SMITH, Alexandria, Virginia, for
Appellant. John L. Brownlee, United States Attorney, Nancy S. Hea-
ley, Assistant United States Attorney, Charlottesville, Virginia, for
Appellee.

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

## OPINION

PER CURIAM:

Gordon Franklin Sprouse, II, was convicted of two counts of willfully and without authority setting fire to timber and other vegegation in a National Forest, in violation of 18 U.S.C. § 1855 (2000). He was sentenced to a term of 97 months imprisonment. Sprouse appeals his sentence, alleging that the district court plainly erred in finding that he created a substantial risk of death or serious bodily injury when he set a fire on May 14, 2001 (Count Two), and clearly erred when it determined that he knowingly created such a risk when he set both fires. Sprouse also contests the district court's order that he pay restitution in the amount of $229,502.57, on the ground that the district court erred by including the cost of fire suppression for the April 9, 2001, fire. We affirm the sentence in part, vacate in part and remand for resentencing and recalculation of the amount of restitution.

Sprouse, a firefighter with the Craigsville Volunteer Fire Department, was convicted of setting fires in the George Washington National Forest in Virginia on April 9 and May 14, 2001. The April 9 fire was the largest of a series of suspicious fires in the area during 2000 and 2001. Craigsville Fire Chief Wayne Martin, Sr., was overtaken by the fire and was forced to take cover in a ditch, watering himself with the firehose and breathing through the hose water while the fire burned over and past him. A fire engine was damaged by the heat, requiring $590 in repairs, and a truck belonging to one of the firefighters was damaged. Although the May 14 fire was immediately discovered by Forest Service agents conducting surveillance in the area, the Forest Service had to use helicopters to control both fires.

The district court determined that base offense level 24 applied to both counts under *U.S. Sentencing Guidelines Manual* § 2K1.4(a)(1)(A) (2000), because the offense "created a substantial risk of death or serious bodily injury to any person other than a partic-

ipant in the offense, and that risk was created knowingly. . . ."[1] The court also made a two-level adjustment for abuse of a position of trust, USSG § 3B1.3, based on Sprouse's position and training as a lieutenant in the Craigsville Fire Department, and ordered that he pay $277,938.09 in restitution pursuant to 18 U.S.C. § 3663A (2000). This amount included the value of the timber destroyed, the cost of repairs to the damaged vehicles, and the cost to the Forest Service of fire suppression for both fires.

On appeal, Sprouse first contends that the May 14 fire did not create a substantial risk of death or serious injury. Because Sprouse did not contest this issue in the district court, it is reviewed for plain error. *United States v. Olano*, 507 U.S. 725, 732-37 (1993). Sprouse contends that the district court plainly erred in accepting the probation officer's recommendation for base offense level 24 for Count Two, the May 14 fire, because that fire was detected almost immediately by a Forest Service officer and quickly controlled. Sprouse only objected in the district court, with respect to both counts, that he had not "knowingly" created a substantial risk of death or serious injury. To that objection the probation officer responded that "[a]rson is an act of violence and violence implies an inherent risk of injury and/or death."

Sprouse now asserts that, if the probation officer's view were correct, every arson offense would be sentenced under the enhanced base offense levels of 24 or 20 provided in § 2K1.4(a)(1)(A) and (a)(2)(A). The published cases addressing the application of subsection (a)(1)(A) deal with arson of structures rather than forest fires, and usually require the presence of one of two factors for an enhanced base offense level: either "(1) the risk of a large explosion, or (2) the presence of nearby residences." *United States v. Georgia*, 279 F.3d 384, 388 (6th Cir. 2002) (listing cases). In addition, although Application Note 2 to § 2K1.4 provides that "substantial risk" includes the risk to firefighters, law enforcement and emergency personnel, some

---

[1]Subsection (a)(2)(A) provides for a base offense level of 20 when the offense created the same risk but the defendant did not act "knowingly," and subsection (a)(3) provides a potentially lesser base offense level of 2 plus the offense level from § 2B1.1 (Theft, Property Destruction and Fraud).

circuits have held that a substantial risk must include something besides a response by firefighters to the fire, because otherwise every fire would require the enhanced base offense level. *Georgia*, 279 F.3d at 387-88; *United States v. Honeycutt*, 8 F.3d 785, 787-88 (11th Cir. 1993).

Although these cases give some support to Sprouse's argument because in this case there was no danger of explosion or damage to any nearby buildings, we cannot say that the district court plainly erred in applying base offense level 24 with respect to the May 14 fire. The fire was set in an area where water was not easily accessible. The dry spring weather had created conditions favorable for fires to spread and the April 9 fire had shown that a slight change in current conditions could quickly result in a major fire that was beyond the capability of the local fire department to control. That such a fire created a substantial risk of death or serious bodily injury was demonstrated by the April 9 fire where Chief Martin almost lost his life. The volunteer firemen did not normally wear protective gear when responding to a fire, making the danger of injury to them greater than it would be for professional firefighters in urban areas. As a trained firefighter who had participated in putting out the previous fires, Sprouse could not help but realize that dangerous fire conditions prevailed all during the spring and that any fire set in a remote area could easily grow into an uncontrollable fire.

The May 14 fire was quickly controlled because the fire was fortuitously discovered and reported by the law enforcement officers doing surveillance in the area. Even if Sprouse intended to report the fire soon after he set it, there was no guarantee that the fire would stay small and easily controllable. The "mere fortuity" that no injury resulted from the defendant's action does not foreclose a finding that the arsonist knowingly created a substantial risk of death or serious bodily injury. *United States v. Ramey*, 24 F.3d 602, 609 (4th Cir. 1994); *see also United States v. Johnson*, 116 F.3d 163, 165 (6th Cir. 1997) (degree of risk not assessed with benefit of hindsight, but as of time fires set).

Next, Sprouse challenges the district court's determination that he knowingly created a substantial risk when he set both fires. Whether the defendant "knowingly" created a substantial risk of death or seri-

ous bodily injury requiring the application of § 2K1.4(a)(1)(A) is a question of fact reviewed for clear error. *Georgia*, 279 F.3d at 387. Several circuits have defined "knowingly," as used in § 2K1.4(a)(1) as being aware that it is "practically certain" that the criminal act will result in a substantial risk of death or serious bodily injury. *See United States v. Johnson*, 152 F.3d 553, 555-56 (6th Cir. 1998); *United States v. Altier*, 91 F.3d 953, 957 (7th Cir. 1996); *United States v. Honeycutt*, 8 F.3d 785, 787 (11th Cir. 1993); *United States v. Karlic*, 997 F.2d 564, 569 (9th Cir. 1993).

Relying on *Johnson*, *Honeycutt*, and similar cases, Sprouse argues that the evidence did not support a finding that he could have been "practically certain" when he set either fire that it would create such a risk. He cites the testimony of a Forest Service employee that weather conditions changed after the April 9 fire began and that there was no evidence about conditions on May 14 except for general dryness. He puts forward the principle previously discussed that danger must be assessed at the time the fire is set without benefit of hindsight. *Johnson*, 116 F.3d at 165; *Honeycutt*, 8 F.3d at 788. Sprouse also argues that simply responding to a fire does not put firefighters in substantial danger of death or serious bodily injury, and that the arsonist must know that special circumstances are present. *See, e.g.*, *Georgia*, 279 F.3d at 387-88. Both of Sprouse's arguments are unpersuasive for the reasons previously discussed. In addition, the government's evidence at trial included testimony that, before the April 9 fire, a Forest Service employee met with the Craigsville Fire Department personnel, including Sprouse, to warn them about the ongoing investigation of suspicious fires. He told them that the arson fires had to be "stopped before someone dies." Given this warning and the other factors previously discussed, we conclude that the district court did not clearly err in finding that Sprouse knowingly created a substantial risk of death or seriously bodily injury when he subsequently set the two fires for which he was convicted.

Next, Sprouse challenges the two-level adjustment he received under § 3B1.3 for having "abused a position of public or private trust, or used a special skill, in a manner that significantly facilitated the commission or concealment of the offense." The district court's determination that this adjustment applies is a factual question reviewed for clear error. *United States v. Gormley*, 201 F.3d 290, 295 (4th Cir.

2000) (special skill); *United States v. Akinkoye*, 185 F.3d 192, 203 (4th Cir. 1999) (position of trust).

The district court found that Sprouse's training as a firefighter and his position as a second lieutenant in the fire department justified the adjustment. Sprouse does not dispute that he held a position of public trust or that he received training. He argues, however, that there was no basis for a finding that either his position or his training helped him to commit or conceal the offense because he simply used a match to light the fires, he was not acting as a firefighter when he set the fires, and there is no record of any action he took to conceal his action, much less that he used his position to conceal his conduct. We agree.

In its finding concerning the adjustment, the district court detailed the training courses Sprouse had completed, noted that the community placed its trust in its firefighters, found that Sprouse's position of trust was "strongly accelerated" when he was promoted to second lieutenant, and found that his position was like that of the defendants in *United States v. Medrano*, 241 F.3d 740, 746 (9th Cir.), *cert. denied*, 533 U.S. 963 (2001), and *United States v. Brelsford*, 982 F.2d 269, 273 (8th Cir. 1992). Medrano was a teller supervisor in a bank; Brelsford was a head teller. Both had responsibilities that enabled them to embezzle money from the banks where they worked without detection and both used their positions of trust to conceal their offenses. In Sprouse's case, the district court did not identify any way in which Sprouse used his position to commit or to conceal his offense, nor is any apparent on the limited record provided on appeal. The district court also relied on the fact that Sprouse's "knowledge of fighting fires is greater than that of the ordinary citizen," but the court did not explain how his training helped him to commit or conceal his arson. The application of the § 3B1.3 adjustment requires some explanation of exactly how a defendant's training assisted his criminal conduct. While it is possible that Sprouse used knowledge he had gained in his training to decide where and how to set the fires, there was no evidence before the court that the fires were set in a manner that demonstrated any particular skill.

The government argues that the adjustment was warranted because Sprouse abused a position of trust in that his position "shielded him

from suspicion." However, there is no evidence in the materials submitted on appeal that Sprouse's position in the fire department helped him to escape detection any longer than he would have if he had not been a firefighter. Therefore, we conclude that the two-level adjustment for abuse of a position of trust or use of special skills was clearly erroneous.

Last, Sprouse contests the district court's decision to include the Forest Service's costs for fire suppression in the amount of his restitution. Under the Mandatory Victims Restitution Act (MVRA), 18 U.S.C. §§ 3663A, 3664 (2000), restitution is required for certain crimes, including offenses against property. 18 U.S.C. § 3663A(c)(A)(ii). When an offense results in damage to a victim's property or loss or destruction of the property, the sentencing court must order the defendant to return the property or pay

> (i) the greater of—
>
> > (I) the value of the property on the date of the damage, loss, or destruction; or
> >
> > (II) the value of the property on the date of sentencing; less
>
> (ii) the value (as of the date the property is returned) of any part of the property that is returned.

18 U.S.C. § 3663A(b)(1)(B).[2] We have held that:

> [i]n cases involving the damage, loss, or destruction of property, restitution must be limited to that which the statute authorizes: return of the property, or payment of the property's value, either on the date of damage or loss or on the date of sentencing, less the value of any part of the property that is returned.

[2]The same language was contained in the law in effect prior to enactment of the MVRA, the Victim and Witness Protection Act of 1982 (VWPA), 18 U.S.C. § 3663(a) (2000), but the decision to order payment of restitution for any offense was in the district court's discretion.

*United States v. Mullins*, 971 F.2d 1138, 1147 (4th Cir. 1992). *Mullins* determined that "an award of restitution under the VWPA cannot include consequential damages such as attorney's and investigators' fees expended to recover the property." *Id. Mullins* looked to decisions from other circuits, noting that the concern in *United States v. Arvanitis*, 902 F.2d 489, 497 (7th Cir. 1990), and *United States v. Mitchell*, 876 F.2d 1178, 1184 (5th Cir. 1989), was to give effect to the statute's plain meaning rather than avoiding recovery that is excessive or for costs that are too remote from the offense. *Mullins*, 971 F.2d at 1148 n.8 (noting that *United States v. Barany*, 884 F.2d 1255, 1261 (9th Cir. 1989), observed that attorneys' fees are "too remote" to be included). The district court in this case was guided by *Mullins*, but determined that fire suppression costs were direct costs of Sprouse's offense, rather than consequential damages, and thus could be properly included in restitution.

On appeal, Sprouse relies principally on *United States v. Newman*, 6 F.3d 623, 630 (9th Cir. 1993). In *Newman*, the defendant, like Sprouse, was convicted of setting a fire in a National Forest, and was apparently sentenced under the 1988 Guideline Manual, the guidelines in effect on the date of his offense. *See* 6 F.3d at 629 n.1. Newman's base offense level was determined under § 2K1.4(c)(2), cross referenced to § 2B1.3 (Property Damage or Destruction), which in turn increased the base offense level for the amount of loss using the table in § 2B1.1. Newman contested the inclusion of $55,173 in fire suppression costs in the amount of loss used to calculate his base offense level. The appeals court agreed that "loss," which was defined in the commentary to § 2B1.1 as "the value of the property taken, damaged, or destroyed," covered only the value of the vegetation destroyed and that fire suppression costs were consequential costs. 6 F.3d at 630. Although Newman was ordered to pay restitution of $55,173, he unaccountably did not contest the amount. The appeals court therefore did not address whether the district court erred in including suppression costs in the restitution order, but it noted the fact that Newman had not raised the issue. *Id.* at 631. From this, Sprouse argues that, if suppression costs are not consequential losses under § 2B1.1, they may not be consequential losses for purposes of restitution.

The government contends that *Newman* is distinguishable because it dealt only with calculation of the base offense level, not the propri-

ety of the restitution amount, and cites a number of cases where legal fees or investigator's fees have been held to be direct costs properly recoverable in restitution because such costs were "a direct and fore-seeable result" of the offense. *United States v. Cummings*, 281 F.3d 1046, 1052 (9th Cir.) (parental kidnapping), *cert. denied*, 123 S. Ct. 179 (2002); *see also United States v. Akbani*, 151 F.3d 774, 779-80 (8th Cir. 1998) (check-kiting scheme). These cases do not involve damage to, loss of, or destruction of property. *Akbani* makes just this distinction, holding that "there is no blanket prohibition in the VWPA against the inclusion of attorneys' fees in the calculation of a restitution amount for offenses that do not result in damage to or loss or destruction of property." 151 F.3d at 780.

The government also cites *United States v. Sharp*, 927 F.2d 170, 174 (4th Cir. 1991), which affirmed restitution for the cost of repairs and replacement of damaged equipment resulting from a bombing at a coal mine. The government equates this case with *Sharp* because both involve damage to property. However, we are not convinced that fire suppression costs are analogous to costs for repair and replacement of equipment.

We conclude that, in the absence of authority to the contrary, the plain meaning of § 3663A controls. Therefore, we find that the district court erred in ordering Sprouse to pay restitution for the cost of fire suppression. Consequently, we are constrained to vacate the restitution order. On remand, the district court should recalculate the restitution amount exclusive of fire suppression costs.

We therefore affirm the sentence in part, but vacate it in part and remand for resentencing in accord with this opinion. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

*AFFIRMED IN PART, VACATED*
*IN PART, AND REMANDED*