IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

Nos. 94-11155 &
95-10213
_____


UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

SHAWNEE LOUISE SCHINNELL,

Defendant-Appellant.

_____

Appeals from the United States District Court for the
Northern District of Texas

_____

April 9, 1996

Before GARWOOD, EMILIO M. GARZA and DENNIS, Circuit Judges.

GARWOOD, Circuit Judge:

Pursuant to a plea agreement, defendant-appellant Shawnee Louise Schinnell (Schinnell) pleaded guilty to one count of wire fraud in violation of 18 U.S.C. § 1343, while preserving her right to appeal the district court's denial of her motion to dismiss on double jeopardy grounds. We affirm the denial of the motion to dismiss. We vacate Schinnell's sentence on other grounds and remanded for resentencing.

**Facts and Proceedings Below**

Beginning prior to April 1988 and continuing through at least October 1993, Schinnell was employed in the accounting department of Trammell-Crow, a real estate firm located in Dallas, Texas.

Between January 1990 and February 1993, Schinnell used her position at Trammell-Crow to draw funds from Trammell-Crow bank accounts through the use of forged signatures, fraudulent endorsements, and wire transfers.  Schinnell then used these funds to purchase for herself real and personal property, as well as to pay expenses associated with S&H Racing, a company that she owned and operated.[1]

In November 1993, Schinnell was interviewed by agents of the Federal Bureau of Investigation (FBI), and conceded her involvement in the offenses.  Before any indictment was sought, Schinnell and her attorney subsequently entered into negotiations regarding the possibility of a plea agreement with members of the United States Attorney's office.  Among the terms of the proposed plea agreement were that Schinnell would plead guilty to one count of bank fraud and agree not to contest any forfeiture proceedings.  However, this proposed agreement was never entered into.

Various items of personal property were subsequently seized by the government, and administrative forfeiture proceedings pursuant to 18 U.S.C. § 981(a)(1)(C) were instituted.  Schinnell received notice of the forfeiture proceedings, yet she chose not to file a claim in or otherwise contest the forfeiture based upon the advice of her new attorney that her resources were best conserved for her criminal defense.  The property was accordingly administratively forfeited.

A superseding indictment was returned in October 1994 charging

---

[1] The facts relating to the commission of the offense are undisputed. They are recited in a factual resume in the plea agreement.

Schinnell with bank fraud in violation of 18 U.S.C. § 1344 (Count 1), wire fraud in violation of 18 U.S.C. § 1343 (Count 2), and interstate transportation of money taken by fraud in violation of 18 U.S.C. § 1957 (Count 3). Schinnell moved to dismiss the indictment on double jeopardy grounds based upon the prior administrative forfeiture. Following a hearing, the court issued a one-paragraph order denying the motion on December 19, 1994.[2] The following day Schinnell entered a conditional plea of guilty to the wire fraud charge reserving her right to appeal the denial of her motion to dismiss. The remaining counts were dismissed upon motion of the government pursuant to a plea agreement.

The district court sentenced Schinnell to a sixty-month term of imprisonment, a three-year term of supervised release, and ordered her to pay restitution totaling $1,707,656.48 in monthly installments of at least four hundred dollars per month beginning thirty days after her release from confinement. Schinnell now brings this appeal.

## Discussion

**I. Double Jeopardy**

   A. Procedure

---

The order below stated:

> "Before the court is the defendant's motion to dismiss indictment on grounds of double jeopardy. Upon consideration of the evidence presented at the December 16 hearing, the court finds that the civil forfeiture in this case does not constitute punishment under the Double Jeopardy Clause of the Constitution. *See United States v. Tilley*, 18 F.3d 295 (5th Cir.), *cert. denied*, __S.Ct. __, 63 U.S.L.W. 3414 (U.S. Nov. 28, 1994)(No. 94-243). Consequently, the motion is **DENIED.**"

3

Schinnell advances two procedural arguments regarding the district court's disposition of her plea of double jeopardy which she contends require remand: first, the district court erred in allocating the burden of proof to the defendant on the double jeopardy issue; and second, the district court failed to make essential findings on the record as required by Fed. R. Crim. P. 12(e).  We address these claims *seriatim*.

The parties are in agreement that the defendant bears the initial burden of establishing a *prima facie* nonfrivolous claim of double jeopardy, after which the burden shifts to the government to demonstrate by a preponderance of the evidence why double jeopardy principles do not bar prosecution.  *United States v. Deshaw*, 974 F.2d 667, 670 (5th Cir. 1992);  *United States v. Levy*, 803 F.2d 1390, 1393-94 (5th Cir. 1986); *United States v. Stricklin*, 591 F.2d 1112, 1117-18 (5th Cir.), *cert. denied*, 100 S.Ct. 449 (1979). However, the parties disagree as to whether the district court properly allocated this burden in the case at bar.

Having reviewed the transcript of the hearing held below, we are satisfied that the trial court properly understood the showing required of the defendant.  During an exchange between the trial court and counsel regarding the proper allocation of the burden on the double jeopardy issue, the trial court remarked:

> "On most motions, the movant even in a criminal case has the *burden of going forward* with sufficient evidence to show the grounds for the motion.  And it does not seem to me that Ms. Schinnell satisfies that burden by just showing that the government has seized some property of hers.  At most, all that shows to me is that she may have a civil claim against the government...*but it certainly doesn't show she has been placed in jeopardy in the*

4

*criminal context unless she shows some relationship between the offense charged and the property seized."* (Emphasis added).

We believe that this statement reflects that the district court was simply holding Schinnell to the burden of going forward with sufficient evidence to establish a *prima facie* claim.[3] Schinnell's double jeopardy claim rests upon a "multiple punishment" theory. The relationship between the previous punishment and the punishment the government currently seeks to impose is the essence of this type of double jeopardy claim. *Department of Revenue of Montana v. Kurth Ranch*, 114 S.Ct. 1937, 1941 n.1 (1994) (Double Jeopardy Clause protects against multiple punishments for *same offense*).

Nor do we find merit in Schinnell's argument that reversal is required because the trial court failed to make essential findings of fact as required by Fed. R. Crim. P. 12(e). Rule 12(e) provides, *inter alia*, "[w]here factual issues are involved in determining a motion, the court shall state its essential findings on the record." However, in *United States v. Yeagin*, 927 F.2d 798, 800 (5th Cir. 1991), we held that where the district court indicated neither the factual findings nor the legal basis for the denial of a motion, we were required to conduct an independent

---

The trial court also stated:

"I think that was what I was suggesting to [defense counsel] myself, that since the defendant's motion is asserting double jeopardy she has to show how that forfeiture action in some manner constitutes placing her in jeopardy for a criminal offense."

5

review of the record to determine whether the district court's decision was supported by "any reasonable view of the evidence."[4] Having done so, we find, for the reason stated below, that no remand is required. The undisputed facts reflect that Schinnell's motion is not well taken.

B.  Merits

By now it is well-established that the Double Jeopardy Clause of the Fifth Amendment affords protection against the imposition of multiple punishments for the same offense.[5]  *United States v. Halper*, 109 S.Ct. 1892, 1897 (1992); *Kurth Ranch*, 114 S.Ct. at 1941 n.1 (1994).  Indeed, the Supreme Court has observed that the prohibition against multiple punishments is one with "deep roots in our history and jurisprudence."  *Halper*, 109 S.Ct. at 1897. Furthermore, the imposition of civil sanctions by the government, where not rationally related to a remedial purpose, may constitute

---

Schinnell questions our continued adherence to *Yeagin* because the decision upon which we relied in reaching our holding, *United States v. Horton*, 488 F.2d 374 (5th Cir.), *cert. denied,* 94 S.Ct. 2405 (1974), was decided prior to the adoption of Rule 12(e). However, *Yeagin* is consistent with the approach to Rule 12(e) adopted by several of our sister circuits. *See United States v. Bloomfield*, 40 F.3d 910, 913-14 (8th Cir. 1994)(*en banc*), *cert. denied*, 115 S.Ct. 1970 (1995); *United States v. Griffin*, 7 F.3d 1512, 1516 (10th Cir. 1993); *United States v. Harley*, 990 F.2d 1340, 1341 & n. 1 (D.C. Cir.), *cert. denied*, 114 S.Ct. 236 (1993); *but see, United States v. Moore*, 936 F.2d 287, 288-89 (6th Cir. 1991)(strict compliance with Rule 12(e)); *United States v. Prieto-Villa*, 910 F.2d 601, 607 (9th Cir. 1990).

However, we take care to note that the protections of the Double Jeopardy Clause are ordinarily implicated only by multiple punishments for the same offense in successive proceedings in which the defendant is in jeopardy. Multiple punishments for a given offense imposed in a single proceeding violate the double jeopardy clause only if they are not legislatively authorized. *Halper*, 109 S.Ct. at 1903 & n. 10.

"punishment" for purposes of the double jeopardy analysis. *Id*. at 1902.

Because it is undisputed that the administrative forfeiture at issue in the present case relates to the same offense for which Schinnell was criminally prosecuted, the only question before us today is whether the forfeiture constituted punishment which would operate to bar the subsequent criminal sanctions sought by the government. On the undisputed facts before us, we conclude that the forfeiture was not punishment, and therefore affirm the district court's denial of Schinnell's motion to dismiss on grounds of double jeopardy.

Our analysis is guided primarily by our recent opinion in *United States v. Arreola-Ramos*, 60 F.3d 188, 192 (5th Cir. 1995), in which we held that "a summary forfeiture, by definition, can never serve as a jeopardy component of a double jeopardy motion." *See also*, *United States v. Clark*, 67 F.3d 1154, 1163 (5th Cir. 1995), *petition for cert. filed*, (U.S. Jan. 16, 1996)(No. 95-7511). Our holding in *Arreola-Ramos* was based upon our determination that an administrative summary forfeiture in which defendant had filed no claim could neither constitute "punishment" nor former jeopardy so as to trigger the protections of the Double Jeopardy Clause.

In concluding that a summary forfeiture could not constitute punishment, we observed that summary proceedings are only available for forfeitures of property that is "unclaimed" or "unowned." Therefore, we stated that "albeit a legal fiction, the very issuance of a summary forfeiture establishes that no one owned the

7

Funds," and "[c]onsequently, their forfeiture punished no one." *Id*. at 192. Several of our sister circuits have reached essentially the same conclusion. *United States v. Cretacci*, 62 F.3d 307, 311 (9th Cir. 1995)(administrative forfeiture is forfeiture of "abandoned" property), *petition for cert. filed*, (U.S. Feb. 13, 1996)(No. 95-7955); *United States v. Baird*, 63 F.3d 1213, 1218 (3rd Cir. 1995)(property administratively forfeited "ownerless" as a matter of law), *cert. denied*, 64 U.S.L.W. 3549 (Feb. 20, 1996). Schinnell concedes that although she was given notice of the forfeiture proceedings, she elected not to enter an appearance to contest them. Therefore, the administrative forfeiture was one of unowned or abandoned property, and could not have punished Schinnell.[6]

Furthermore, having elected not to contest the forfeiture, Schinnell was never a party to the administrative forfeiture proceeding, and consequently there was no former jeopardy. As the Seventh Circuit explained in its influential opinion in *United States v. Torres*, 28 F.3d 1463, 1465 (7th Cir.), *cert. denied*, 115 S.Ct. 669 (1994) upon which we relied in *Arreola-Ramos*:

> "You can't have double jeopardy without a former jeopardy. *Serfass v. United States*, 420 U.S. 377, 389, 95 S.Ct. 1055, 1063, 43 L.Ed. 265 (1975). As a non-

---

This result is not altered by the fact that the government was aware that Schinnell owned or purported to own the property as evidenced by plea negotiations in which the government sought Schinnell's agreement not to contest the forfeiture. As we noted in *Arreola-Ramos, supra*, the notion that the property is "unowned" is simply a legal fiction. *See also Cretacci* (failure to make claim is abandonment); *United States v. Idowu*, 74 F.3d 387, 395 (2d Cir. 1995)(finding it irrelevant whether seizing agency knows defendant owned property).

> party, Torres was not at risk in the forfeiture proceeding, and '[w]ithout risk of a determination of guilt, jeopardy does not attach, and neither an appeal nor further prosecution constitutes double jeopardy.' *Id*. at 391-92, 95 S.Ct. at 1064."

*See also Baird*, 63 F.3d at 1218-19; *United States v. Idowu*, 74 F.3d 387 at 394 (2d Cir. 1995). The facts relating to the forfeiture proceeding in the present case are indistinguishable, and accordingly Schinnell's claim of double jeopardy must fail.

We find additional support for our holding today in *United States v. Tilley*, 18 F.3d 295 (5th Cir. 1994), which addressed whether the administrative forfeiture of drug proceeds under 21 U.S.C. §§ 881(a)(6) and (a)(7) constituted punishment for double jeopardy purposes. In concluding that the forfeiture did not constitute punishment, we relied partly on the rational relation test set forth in *Halper*, holding that the drug proceeds forfeited were necessarily proportional to the harms inflicted on society by the sale of the narcotics. However, we additionally observed:

> "Even absent the rational relation test of *Halper*, we would nevertheless be required to hold that the forfeiture of the proceeds from illegal drug sales does not constitute punishment because of the implicit and underlying premise of the rational relation test: The nature of the forfeiture proceeding may constitute punishment because it involves the extraction of lawfully derived property from the forfeiting party. . . When, however, the property taken by the government was not derived from lawful activities, the forfeiting party loses nothing to which the law ever entitled him." *Id*. at 300.

We further noted, "the forfeiture of illegal proceeds, much like the confiscation of stolen money from a bank robber, merely places that party in the lawfully protected financial status quo that he enjoyed prior to launching his illegal scheme." *Id*. We find

9

nothing which renders this reasoning inapplicable to the forfeiture of property purchased with proceeds admittedly obtained through wire fraud in violation of 18 U.S.C. § 1343.

Schinnell's contention that not all of the forfeited property was traceable to proceeds of the fraud does not alter this result. The forfeiture here was sought and effected solely under section 981(a)(1)(C) which applies only to "property, real or personal, which constitutes or is derived from proceeds" of designated offenses including violations of section 1343. Schinnell failed to contest the forfeiture, and therefore the forfeited property has been deemed traceable to the proceeds of her fraud. This remains the case despite the fact that at the double jeopardy hearing before the district court Schinnell introduced evidence through which she sought to establish that some of the forfeited property was not traceable to her fraud. Once the administrative forfeiture was completed, the district court lacked jurisdiction to review the forfeiture except for failure to comply with procedural requirements or to comport with due process. *Arreola-Ramos*, 60 F.3d at 191 & n.13-14 (claims may be brought as either civil action collaterally attacking summary forfeiture or in criminal proceeding as a Rule 41(e) motion to return seized property, but review limited to compliance with statutory and due process requirements); *Linarez v. United States Dept. of Justice*, 2 F.3d 208, 211-14 (7th Cir. 1993); *United States v. Giraldo*, 45 F.3d 509, 511 (1st Cir. 1995). Even were a judicial challenge to the forfeiture to be available, the judicial relief would be to set aside the forfeiture

10

(in whole or in part) because the forfeited items were not within section 981(a)(1)(C), not to bar the criminal prosecution. The property was forfeited as criminal proceeds under section 981(a)(1)(C); if it was such proceeds, then the forfeiture is not punishment; if it was not such proceeds, Schinnell had an adequate remedy to contest and prevent or set aside the forfeiture of items which were not proceeds, and, if successful, would likewise suffer no punishment by the attempted forfeiture. By foregoing that remedy, she cannot retroactively transmute the facially non-punitive forfeiture into a punitive one by litigating the proceeds issue in the criminal prosecution. Therefore, for this additional reason also, no remand for consideration of the extent to which the forfeited property was in fact proceeds is available.[7]

Accordingly, the district court did not err by denying Schinnell's motion to dismiss on grounds of double jeopardy.

## II. Sentencing

### A. Four Level Enhancement

We find no merit in Schinnell's contention that the district court erred in applying a four-level enhancement to her sentence

---

The cases from this Circuit relied upon by Schinnell for the proposition that a remand is required to determine the source of the forfeited property, *United States v. One Rolls Royce, VIN No. SRL 39955*, 905 F.2d 89 (5th Cir. 1990) and *United States v. Gonzalez*, 1996 WL 77700 (5th Cir. 1996), are distinguishable in that they were appeals from *judicial* forfeiture proceedings. Therefore, the jurisdictional defect which barred the district court's consideration of that question was not present in those cases. Having failed to avail herself of the procedures for requiring the government to institute judicial forfeiture proceedings in the first instance, remand is not available to reopen the inquiry into whether there was an adequate basis for this proceeds forfeiture.

11

pursuant to section 2F1.1(b)(6)(B)for fraud over $1 million "affecting a financial institution."[8]  Paragraph five of the probation officer's addendum to the presentence report (PSR), which the district court adopted, indicated that application of the enhancement under section 2F1.1(b)(6)(B) was appropriate based upon the fact that a tolling agreement had been entered into between Trammell-Crow and one of its banks preserving Trammell-Crow's ability to bring suit against the bank to recover its lost funds. The PSR also indicated that the probation officer had been told by Trammell-Crow that if a settlement agreement was not reached, a civil suit would be filed against that bank and others in which Trammell-Crow had accounts against which Trammell-Crow checks and other items forged by Schinnell had been debited.  Therefore, the PSR concluded that Schinnell's actions had affected a financial institution.

Schinnell's argument is essentially that the threat of suit against a financial institution based upon a fraud perpetrated upon one of its customers is simply not the type of effect on the institution contemplated by the guidelines.  Unfortunately, there is scant authority among the courts of appeal construing this

---

"(6) If the offense --
    (A)   substantially jeopardized the safety and soundness of a financial institution; or
    (B)   affected a financial institution and the defendant derived more than $1,000,000 in gross receipts from the offense,
increase by **4** levels.  If the resulting offense level is less than level **24**, increase to level **24**."  U.S.S.G. § 2F1.1(b)(6)(A),(B).

12

provision, and what little there is does not prove to be of any assistance in the present case. However, given the evidence of Schinnell's extensive and prolonged fraud involving forged signatures, fraudulent endorsements and wire transfers, all presented, and intended to be presented, to the banks for the advancement of funds thereon and concomitant debiting of their customer's accounts, direct harm to the banks involved was certainly reasonably foreseeable. The existence of the tolling agreement further demonstrates that the banks are realistically exposed to substantial potential liability as the result of Schinnell's fraud. As Schinnell does not contest that the gross receipts of her fraud exceeded $1 million, we find no error in the application of the enhancement to her sentence.

B. Restitution

Schinnell asserts that the district court's restitution award was erroneous in three respects: (1) the restitution award includes compensation for consequential damages not properly recoverable under the Victim and Witness Protection Act (VWPA), 18 U.S.C. §§ 3663-64; (2) the district court failed to make adequate findings regarding Schinnell's ability to pay; and (3) the amount of restitution ordered was an abuse of discretion as the district court failed to consider Schinnell's ability to pay.

In reviewing an order of restitution, if the restitution was imposed in violation of the VWPA, it is illegal, and the proper standard of review is *de novo*; otherwise an order of restitution is reviewable only for abuse of discretion, and will be reversed only

13

if the defendant demonstrates that it is probable that the district court failed to consider one of the mandatory factors and the failure to consider that factor influenced the court. *United States v. Reese*, 998 F.2d 1275, 1282 (5th Cir. 1993).

We must agree with Schinnell that the district court erred in including $344,760.93 in expenses incurred by Trammell Crow for, as stated in the PSR, "accounting fees and cost to reconstruct the bank statements for the time period that the defendant perpetuated this scheme, temporary employees hired by the company to reconstruct the monthly bank statements, and cost incurred by the company [in borrowing funds] to replace the stolen funds." Section 3663(b)(1) of the VWPA limits restitution to either the return of the property, or if that is inadequate, to the value of the property when stolen less the value of the property when returned. *United States v. Mitchell*, 876 F.2d 1178, 1184 (5th Cir. 1989); *see also United States v. Barany*, 884 F.2d 1255, 1260 (9th Cir. 1989), *cert. denied*, 110 S.Ct. 755 (1990). Therefore, the VWPA provides no authority for restitution of consequential damages involved in determining the amount of the loss or in recovering those funds. *See Mitchell*, 876 F.2d at 1184(no restitution of "cost of restoring property to its pre-theft condition, or cost of employing counsel to recover from an insurance company"); *United States v. Arvanitis*, 902 F.2d 489, 497 (7th Cir. 1990) (attorneys' fees spent investigating fraudulent claim); *Government of the Virgin Islands v. Davis*, 43 F.3d 41, 44-46 (3d Cir. 1994) (attorneys' fees generated to recover or protect property), *cert. denied*, 115 S.Ct.

14

2280 (1995); *United States v. Diamond*, 969 F.2d 961, 968 (10th Cir. 1992) (attorneys' fees and expenses in liquidating company); *United States v. Mullins*, 971 F.2d 1138, 1147 (4th Cir. 1992) (attorneys' fees and investigators to recover property).  The district court erred in including the $344,760.93 in Trammell-Crow costs and expenses.

Schinnell's remaining arguments are closely related to one another, as she maintains both that the district court failed to make adequate findings on the record to support its restitution order and that the award itself was an abuse of discretion.  When the district court orders full restitution, it is only necessary to assign specific reasons for doing so where the record itself is inadequate to allow us to properly review the restitution award on appeal.  *United States v. Patterson*, 837 F.2d 182, 187 (5th Cir. 1988); *Mitchell*, 876 F.2d at 1183 (*quoting Patterson*).  We find that the record before us, which includes both the PSR and the transcript of the sentencing hearing, is sufficient to allow us to properly conduct our review.

Schinnell bases her argument that the district court failed to consider her ability to make restitution primarily on the court's statement at the sentencing hearing that, "I recognize as a practical matter . . . that a million and a half dollars is a lot of restitution to expect from Ms. Schinnell at least over any short term from now . . . ."  In addition, Schinnell points to the PSR's finding that Schinnell had a negative net worth of nearly $1 million and a negative monthly cash flow of $201 per month as

15

further evidence of her inability to make restitution to Trammell-Crow.

Section 3664 of the VWPA provides:

"[t]he court, in determining whether to order restitution under section 3663 of this title and the amount of such restitution, shall consider the amount of the loss sustained by any victim as a result of the offense, the financial resources of the defendant, the financial needs and earning ability of the defendant and the defendant's dependents, and such other factors as the court deems appropriate."

Our review of the record persuades us that the district court satisfied its statutory mandate.

While the district court did recognize that it was unlikely that Schinnell possessed the ability to pay such a large amount over the "short term," it expressly made concessions to the defendant's financial situation in tailoring the order of restitution:

"I recognize as a practical matter the difficulty Ms. Schinnell may have in paying that amount in a lump sum, and so to better accommodate her financial circumstances, I will give her the option of paying that restitution in monthly installments provided that each installment is at least four hundred dollars and the installments be made at least monthly, the first installment to be due thirty days from the day that Ms. Schinnell is released from custody."

In addition, the sentencing guidelines provided for a fine in the range of ten thousand to one hundred thousand dollars which the district court declined to impose "since I do not think Ms. Schinnell has the capability of paying both a fine and restitution, and I think it's more than important that her resources be devoted to restitution so I'm not going to order any fine." These remarks suggest that far from ignoring one of the mandatory factors set

16

forth in section 3664, the district court structured its order so as to enhance Schinnell's ability to comply with its terms.

Nor does Schinnell's current financial situation prevent the assessment of restitution as a "defendant's indigency at the time restitution is ordered is not a bar to the requirement of restitution." *United States v. Ryan*, 874 F.2d 1052, 1054 (5th Cir. 1989). The fact that Schinnell had operated her own business as well as the duration and extent of the fraud perpetrated against Trammell-Crow are indicative of her considerable financial acumen. Furthermore, Schinnell's current negative net worth is largely the result of a civil judgment obtained against her by Trammell-Crow for her fraud, and the district court explicitly stated that the restitution order was not intended to permit double recovery for those losses compensated by collection on the civil judgment. Therefore, the district court did not abuse its discretion in ordering Schinnell to pay substantial restitution.

Accordingly, Schinnell's conviction is AFFIRMED, her sentence is VACATED and the cause is REMANDED for resentencing consistent with this opinion.


DENNIS, Circuit Judge, specially concurring:

I concur in the majority's opinion in all respects except for its reliance upon *United States v. Arreola-Ramos*, 60 F.3d 188 (5th Cir. 1995), for the proposition that an administrative "summary forfeiture, by definition, can never serve as a jeopardy component of a double jeopardy motion [because in such proceedings] *no one is punished.*" *Id.* at 192

17

(emphasis original). *Arreola-Ramos* is considered precedential in our circuit for the point relied upon by the majority, but I believe that in this respect it conflicts with the Supreme Court's decisions in *Montana Department of Revenue v. Kurth Ranch,* ___U.S. ___, 114 S.Ct. 2801, 125 L.Ed.2d 488 (1944); *Austin v. United States,* ___U.S.___, 113 S.Ct. 2801, 125 L.Ed.2d 488 (1993); and *United States v. Halper,* 490 U.S. 435, 109 S.Ct. 1892, 104 L.Ed.2d 487 (1987), and should be reconsidered as to that issue by this court en banc.

In *Arreola-Ramos*, the Government seized money during a search of the defendant's home in connection with its investigation of suspected drug activity. While Arreola-Ramos was incarcerated following his arrest on charges stemming from the same activity, the Government, in accordance with federal forfeiture provisions, published notice of its intention to forfeit the property. Arreola-Ramos did not enter an appearance or contest the forfeiture, and the property was consequently forfeited summarily, with title vesting in the Government. Subsequently, Arreola-Ramos filed a motion to dismiss the criminal case pending against him, arguing that the prosecution for the same offense giving rise to the forfeiture placed him in jeopardy a second time, in violation of the Fifth Amendment's double jeopardy clause. Although acknowledging that the double jeopardy clause protects against multiple punishments, as well as multiple prosecutions, *id.* at 191-92, the court rejected the defendant's contention, holding that an administrative forfeiture, "by definition, can never serve as a jeopardy component of a double jeopardy motion. In summary forfeiture proceedings, there is no trial, there are no parties, and *no one is punished.*" *Id.* at 192 (emphasis original).[9]

---

The *Arreola-Ramos* court also adverted to *Serfass v. United States*, 420 U.S. 377, 95 S. Ct. 1055, 43 L.Ed.2d 265 (1975), for the proposition that jeopardy cannot attach "until a defendant is 'put to trial before the trier of facts, whether the trier be a judge or jury.'") *Arreola-Ramos*, 60 F.3d at 192 n. 22 (quoting *Serfass*, 420 U.S. at 388, 95 S. Ct. at 1063). *Serfass*, however, was a case implicating the double jeopardy prohibition against multiple prosecutions and does not stand for the proposition that all double jeopardy claims are predicated on multiple proceedings. *See United States v. Baird*, 63 F.3d 1213, 1225 (3rd Cir. 1995)(Sarokin, J., dissenting); *United States v. Brophil*, 899 F. Supp. 1257, 1261-62 (D.Vt. 1995), *overruled sub silentio by United States v. Idowu*, 74 F.3d 387 (2nd Cir. 1996).

The panel opinion characterized the defendant's argument as "a transparent bit of legal alchemy, [that] attempts to transmute the 'lead' of a civil forfeiture proceeding -- in which [defendant] was not even a party -- into the 'gold of former jeopardy.'" *Id.* at 190. Examination of the *Arreola-Ramos* gloss on civil forfeiture, however, reveals the opinion itself to be spun with threads of judicial straw rather than even Rumpelstiltskin's gold. The opinion is predicated on what the panel acknowledged was a "legal fiction": That property that is unclaimed in an administrative forfeiture is "unowned" and consequently its forfeiture cannot be "punishment." *See id.* at 192.

Recent United States Supreme Court opinions, and this circuit's decisions interpreting them, clearly establish that the forfeiture of a person's lawfully owned property, because of that person's illegal activity, may constitute "punishment" for double jeopardy purposes. *See Austin v. United States*, __ U.S. __, 113 S. Ct. 2801, 125 L.Ed.2d 488 (1993)(forfeiture of property under 21 U.S.C. §§ 881(a)(4) and 881(a)(7) *per se* constitutes punishment for purposes of Eighth Amendment excessive fines analysis); *United States v. Halper*, 490 U.S. 435, 109 S. Ct. 1892, 104 L.Ed.2d 487 (1989)(civil penalty may be punishment for purposes of double jeopardy analysis); *United States v. Perez*, 70 F.3d 345 (5th Cir. 1995)(*Austin*'s reliance on *Halper* demonstrates that forfeitures under 21 U.S.C. §§ 881(a)(4) and 881(a)(7) are punishment *per se* under either double jeopardy or excessive fines analysis); *see also Montana Department of Revenue v. Kurth Ranch*, __ U.S. __, 114 S. Ct. 2801, 125 L.Ed.2d 488 (1994)(holding that Montana's tax on the possession of illegal drugs constituted punishment for purposes of the double jeopardy clause). The proper question presented by an administrative forfeiture double jeopardy claim, therefore, is not whether the defendant claimed ownership at the appropriate time, but whether the defendant actually had a legal property interest in the forfeited items, and consequently was punished as a result of the property's forfeiture. *See United States v. Baird*, 63 F.3d 1213, 1224 (3rd Cir. 1995)(Sarokin, J., dissenting)("The issue should be

19

whether defendant was the owner, not whether he filed a proper and timely claim of ownership in the forfeiture proceeding. He is punished if his property is forfeited, irrespective of whether or not he participated."); *see also Gainer v. United States*, 904 F.Supp. 1234, 1237 (D.Kan. 1995)("The character of the act of forfeiture is without question punishment whether or not a defendant appears as part of the proceeding. This is especially true when there is no doubt about the owner of the property seized."); *United States v. Brophil*, 899 F.Supp. 1257, 1262 (D.Vt. 1995)(a forfeiture proceeding "subject[s] the property owner to the hazards of forfeiture, regardless of whether or not he appeared as a party. Because the Supreme Court has held that such civil forfeiture proceedings do constitute punishment . . . the protections of the Double Jeopardy Clause should apply to one like Brophil whose property the Government has seized in that manner."), *overruled sub silentio by United States v. Idowu*, 74 F.3d 387 (2nd Cir. 1996). There are valid reasons a defendant may fail to inject him or herself into administrative forfeiture proceedings, from lack of money to obtain assistance of counsel or post a bond to fear of jeopardizing trial rights. *See, e.g., Baird*, 63 F.3d at 1224 (Sarokin, J., dissenting)("A defendant may choose not to participate because the allegations are true, or for fear that a claim of ownership could be utilized against him in the criminal proceeding."). A defendant's decision to refrain from contesting forfeiture proceedings should not serve as the basis for manufacturing the fiction that property belonging to the defendant is ownerless.

In concluding that a defendant who has failed to assert his ownership interest by timely contesting an administrative forfeiture has never been in jeopardy, the *Arreola-Ramos* panel followed the Seventh Circuit's lead in *United States v. Torres*, 28 F.3d 1463 (7th Cir. 1994), a decision that glibly concluded jeopardy did not attach where the defendant never became a party to an administrative forfeiture proceeding due to his failure to contest the forfeiture: "As a non-party, Torres was not at risk in the forfeiture

proceeding, and '[w]ithout the risk of a determination of guilt, jeopardy does not attach, and neither an appeal nor further prosecution constitutes double jeopardy.'" *Torres*, 28 F.3d at 1465 (quoting *Serfass v. United States*, 420 U.S. 377, 891-92, 95 S. Ct. 1055, 1064, 43 L.Ed.2d 265 (1975)). I recognize that the other circuit courts of appeal to address this issue have done the same, seizing the glittering opportunity presented by *Torres* to evade a difficult constitutional issue. *See, e.g.*, *United States v. German*, 76 F.3d 315 (10th Cir. 1996); *United States v. Cretacci*, 62 F.3d 307 (9th Cir. 1995); *United States v. Idowu*, 74 F.3d 387 (2nd Cir. 1995); *United States v. Baird*, 63 F.3d 1213 (3rd Cir. 1995). The superficial appeal of an erroneous decision, however, does not transmute its hollow essence into a rationale based on reality or common sense. The *Torres* line of cases flies in the face of both reason and Supreme Court precedent, *see Baird*, 63 F.3d at 1225 (Sarokin, J., dissenting); *Gainer*, 904 F.Supp. at 1237, *Brophil*, 899 F.Supp. at 1261-66, and this circuit's reliance on the *Torres* approach should receive closer scrutiny and more careful consideration in light of those Supreme Court decisions.

In this case, however, the district court properly found that the forfeiture of the proceeds of Schinnell's fraudulent activities was not punishment requiring dismissal of her criminal prosecution under the double jeopardy clause. Schinnell's property was forfeited under a statute that applied only to property constituting or derived from proceeds. *See* 18 U.S.C. § 1343. As the majority discusses as additional grounds for rejecting Schinnell's double jeopardy claim, the forfeiture of proceeds is not punishment, *see United States v. Tilley*, 18 F.3d 295 (5th Cir. 1994), and, to the extent that property rightfully belong to Schinnell was improperly forfeited under § 1343, her recourse was to seek to have the forfeiture set aside. *See slip op.* at 9-11.