IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

Nos. 96-30641
96-30699
96-30700
Summary Calendar
_____


UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

CONNIE S. LEWIS, PATSY E. LEWIS, and
MARION FRANCIS RICHEY,

Defendants-Appellants.

_____

Appeal from the United States District Court for the
Western District of Louisiana
95-CR-10016
_____

December 11, 1996

Before GARWOOD, JOLLY, and DENNIS, Circuit Judges.

PER CURIAM:[*]

Appellants Connie S. Lewis, Patsy E. Lewis, and Marion Francis
Richey pled guilty to charges arising from a long-standing food
stamp fraud scheme. The Lewises' two sons, Jason and Carson, also
pled guilty; they do not appeal. Following a sentencing hearing,
the district court sentenced the five defendants to make

_____

[*]Pursuant to Local Rule 47.5, the court has determined that
this opinion should not be published and is not precedent except
under the limited circumstances set forth in Local Rule 47.5.4.

restitution to the Department of Agriculture, among other penalties. Connie Lewis and his wife, Patsy Lewis, were each required to make restitution in the amount of $4,005,399, jointly and severally liable with the other co-defendants. Richey was ordered to make restitution in the amount of $414,947, jointly and severally liable with the other co-defendants. Connie Lewis, Patsy Lewis and Richey appeal the district court's determination of the amount of restitution, alleging various errors. Having reviewed the briefs and the record, we conclude that the district court did not err, and we therefore affirm.

I

The Lewis family conducted its illegal operations at two family-run meat markets, Lewis Meat Market in Alexandria, Louisiana, and Lewis Meat and Slaughter in Pollock, Louisiana. The Alexandria store began accepting food stamps in 1988; the Pollock store accepted stamps beginning in 1992. In the spring of 1995, Richey, Connie Lewis' cousin, became involved with the Alexandria store with the intent of taking over the business when Lewis "retired." In June 1995, Richey applied for authorization to accept food stamps in the name of CENLA Meats. The application was denied, but Richey continued to work at the Alexandria store and to participate in the food stamp fraud conspiracy.

The scheme was simple. Rather than supplying food to food stamp recipients, the Lewises would illegally purchase food stamp coupons in exchange for cash at a substantial discount to the face value of the coupons. The defendants would then redeem the coupons for their full face value, falsely certifying that they properly accepted the coupons in exchange for equivalent amounts of eligible food items.

During the relevant period, the two stores redeemed a total of $4,216,209 in food stamp coupons. Of this total, $436,786 was redeemed between June 1995 and October 1995, the period during which Richey was an active participant in the conspiracy. The coupons redeemed during this period were redeemed by the Pollock store, because the Alexandria store was no longer authorized to accept food stamps. The evidence indicated that the defendants had purchased many of these coupons in Alexandria, and then illegally transferred them to the Pollock store.

In order to calculate the amount of restitution required by the Victim and Witness Protection Act (the "VWPA"), 18 U.S.C. §§ 3663 and 3664, the district court deducted five percent from the full face value of coupons redeemed during the period over which each defendant participated in the conspiracy. The five percent represented the most generous estimate suggested of the portion of redemptions that represented legitimate exchanges for food.

II

The Lewises argue that the district court should have calculated the required restitution from the face value *less* the amount they actually paid in cash to food stamp recipients. The Lewises insist that the VWPA "requires that [they] be given credit for the value of the part of the property that was returned to the owner at the time of the illegal transaction." Connie S. Lewis Br. at 9-10. The Lewises cite various cases in which defendants' restitution was reduced by the amount of property or value that was returned to the victim of the crime.

The Lewises paid approximately 78% of the coupons' face value in cash to food stamp recipients. On this basis, they argue that more than $3 million was "returned." The Lewises cite 18 U.S.C. § 3663(b)(1), arguing that this limits the amount of restitution the court may permissibly order to approximately $800,000.

Under 18 U.S.C. § 3663(b)(1)(A), the court may order the defendant to "return the property to the owner or someone designated by the owner." If the property cannot feasibly be returned, the defendant shall make restitution in an amount equivalent to the value of the property, "less the value (as of the date the property is returned) of any part of the property that is returned." 18 U.S.C. § 3663(b)(1)(B)(ii).

4

This provision does not help the Lewises, because they mistake the nature of the "property" at issue. The VWPA permits the court to order a defendant to make restitution to "any victim." The Lewises illegally obtained "property" in two steps of their criminal scheme: they illegally obtained food stamps coupons from indigent individuals, and they illegally obtained cash redemptions from the United States Department of Agriculture. Whether criminally complicit food stamp recipients could be considered "victim owners" for restitution under the VWPA is unclear, but they are not the victim to whom the district court ordered restitution. The victim here is the Department of Agriculture, and the illegal cash payments that the Lewises made to food stamp recipients does not constitute a "return" of the cash redemption they fraudulently obtained from the Department.

The amount of "profit" the Lewises made from their illegal scheme is irrelevant to the amount of restitution that is owed. The Lewises illegally obtained in excess of $4 million from the Department of Agriculture, and the Department has suffered a real loss in that amount. The purpose of the food stamp program is to provide nutritional food, not cash, to needy families. The defendants have thwarted that purpose. While the defendants' expenses in conducting their illegal operation undoubtedly reduced the profit they gained, those expenses did not alleviate the loss

5

to the Department of Agriculture. The Lewises' argument is without merit, and we conclude that the district court properly ordered restitution in the full face amount of the coupons illegally redeemed.

                                III

Marion Richey argues that the district court improperly "extrapolated" information for the Alexandria store between 1988 and August 1993 to determine the amount illegally redeemed during the months in 1995 when he was a member of the conspiracy. Richey further argues that the 5% credit for legitimate sales was too small because the evidence "would indicate that more than five percent of the food stamp transactions would be for legitimate sales of meat." Richey Br. at 7-8.

Under 18 U.S.C. § 3664(d), the government bears the burden of proving the amount of restitution owed by a preponderance of the evidence, and the district court is to resolve disputes as to the proper amount of restitution. Without deciding that such an "extrapolation" would be improper in the absence of more definite evidence, we observe that Richey mistakes the method of calculation employed by the district court.

At the sentencing hearing, Special Agent Gerald Burkhalter testified concerning the facts revealed by the Department of Agriculture's investigation of the illegal scheme. Burkhalter

testified to dollar amount of food stamp coupons that the Lewis family redeemed in each month of the conspiracy. Burkhalter stated that between June 1995 and October 1995 the Lewis operation, through the Pollock store,[1] redeemed a total of $436,786. Rec. 4, 24-25. No extrapolation of data from earlier periods was performed. As an active and knowing member of the conspiracy, Richey is responsible for this entire amount, without regard to whether the stamps in question were illegally purchased at the Pollock store or at the Alexandria store where he worked.

Richey's second challenge to the $415,947 restitution award is an assertion that the government failed to prove that only five percent of the sales were legitimate. This argument is without merit. The government's financial analysis indicated that between two and three percent of food stamp coupon redemptions represented legitimate sales. Jason Lewis agreed that this figure was correct to the best of his knowledge. Carson Lewis testified that he believed the figure was three to four percent. Rec. 4, 32. The presentence report accepted a figure of 2.5 percent, and then generously doubled it to five percent to account for possible error. The district court adopted this figure.

---

[1]At this point in the conspiracy, the Alexandria store was no longer authorized to accept food stamps. Despite this, Richey and others continued to purchase food stamps coupons in Alexandria. The defendants would then illegally transfer the coupons to the Pollock store to be redeemed.

The court was required to resolve the factual dispute by a preponderance of the evidence. The defendants presented no evidence that a figure higher than five percent was appropriate. When asked whether two to five percent would be a "fair accounting" Richey himself did not deny that it was, but simply suggested that they were trying to "build up" the meat business with more sales. Rec. 4, 44. Neither Richey nor any other defendant offered evidence that more than five percent of the food stamp redemptions represented legitimate sales. The district court did not clearly err in determining that the government had shown by a preponderance of the evidence that five percent was the appropriate figure.

Richey's final argument is that the district court abused its discretion in ordering restitution in an amount he is unable to pay. We find this argument unpersuasive. In determining an amount of restitution to be paid, the district court considers not only a defendant's present financial resources, but also his future ability to pay. United States v. Schinnell, 80 F.3d 1064, 1072 (5th Cir. 1996). The defendant bears the burden of persuading as to any mitigating financial factors under § 3664(a). United States v. Matovsky, 935 F.3d 719, 722 (5th Cir. 1991). Richey has been regularly employed over most of his life, and presented no evidence that he will be unable to pay the restitution imposed over time. We find that the district court did not abuse its discretion in

8

declining to depart downward from the restitution recommended in the presentence report.

IV

We conclude that the district court properly determined the amount of restitution to be made by the defendants to the victim of their crime, the United States Department of Agriculture. The sentences imposed by the district court upon Connie S. Lewis, Patsy E. Lewis, and Marion Francis Richey are therefore

A F F I R M E D.