USCA1 Opinion

 

 [NOT FOR PUBLICATION--NOT TO BE CITED AS PRECEDENT]

 United States Court of Appeals
 For the First Circuit
 ____________________

No. 98-2368

 UNITED STATES,

 Appellee,

 v.

 ADAM COLLINS, A/K/A THOMAS SMITH,
 A/K/A WILLIAM GETCHELL, A/K/A CHAS NORTON,

 Defendant, Appellant.

 ____________________

 APPEAL FROM THE UNITED STATES DISTRICT COURT

 FOR THE DISTRICT OF MASSACHUSETTS

 [Hon. Robert E. Keeton, U.S. District Judge]

 ____________________

 Before

 Torruella, Chief Judge,

 Hill and Cyr, Senior Circuit Judges.

 _____________________

 Leo T. Sorokin, Federal Defender Office, with whom
Elizabeth L. Prevett, Federal Defender Office, was on brief, for
appellant.
 Joshua Levy, Assistant United States Attorney, with whom
Donald K. Stern, United States Attorney, was on brief, for
appellee.

 ____________________

 December 27, 1999
 ____________________ HILL, Senior Circuit Judge. The defendant was convicted
of conspiracy to commit bank fraud, mail fraud, bank fraud, and
counterfeiting and was sentenced to pay restitution in an amount
equal to the total loss to all the victims of the scheme. 
Defendant appeals the restitution order.
 I.
 Adam Collins, along with several others, was convicted of
conspiracy to commit bank fraud as well as several substantive
counts including bank fraud, mail fraud, and counterfeiting. These
charges arose from a scheme in which the conspirators obtained the
account numbers of legitimate businesses, ordered checks with the
company names and account numbers, and cashed them at check cashing
facilities, supermarkets, and banks.
 In the Indictment, Collins was alleged to have obtained
the copies of checks issued by the legitimate businesses, placed
the orders for new checks drawn on these businesses' accounts,
arranged for them to be sent to a leased mailbox, gathered other
conspirators to obtain false identification from agencies such as
the Division of Motor Vehicles, issued checks payable to these
false identifications, and employed co-conspirators to go out and
cash these checks at various stores, supermarkets and check cashing
establishments. The Indictment also names the specific co-
conspirator who is alleged to have cashed specific individual
checks.
 In December of 1997, Collins pled guilty to a single
count of conspiracy to commit bank fraud. At the plea hearing, the
government stated that the conduct of the defendant in the
conspiracy consisted of the cashing of a counterfeit check in the
amount of $302.53 and the cashing with co-defendants and others of
at least 67 fraudulent checks. In its summary of the evidence
against Collins, the government included all the checks cashed by
the conspirators. Collins objected.
 In the Presentence Report (PSR), Collins' various check
cashings were detailed. The first of some 96 checks was cashed by
Collins on May 17, 1991, and the last on August 2, 1995. The PSR
listed eight companies whose checks were counterfeited and cashed
by Collins. It stated that he went out to cash checks with other
co-conspirators who were cashing checks under these same company
names, and calculated his base offense level according to the
losses attributable to all of the checks cashed in the names of the
eight companies. The total amount of these checks cashed was
$158,150.
 The PSR also stated that five other individuals involved
cashed checks totaling $132,880, and that these checks had names of
companies other than those on the checks cashed by Collins. In the
"Victim Impact" section, the PSR stated that the total loss to
victims of all check-cashing alleged in the Indictment for whom the
government had been able to determine names and addresses was
$274,278.67, and concluded that this loss was attributable to each
conspirator.
 Collins objected, asserting that the loss calculation for
"restitution can only be ordered for persons directly harmed by
defendant's criminal conduct in the course of the . . . conspiracy"
citing 18 U.S.C. 3663(a)(2). The government argued that the
amounts of checks cashed by individuals about whose check cashing
the defendant was aware should be added to the $158,150 figure as
a loss "reasonably foreseeable" to Collins.
 The district court ordered restitution in the full amount
and Collins appealed. We review the legality of the order of
restitution de novo. United States v. Rostoff, 164 F.3d 63, 66
(1st Cir. 1999).
 II.
 Prior to 1990, the Victim Witness Protection Act (VWPA or
the Act), 18 U.S.C. 3663, provided that the sentencing court "may
order . . . the defendant [to make] restitution to any victim of
[the] offense." In 1990, the Supreme Court held that this language
limited restitution orders to the loss caused by the specific
offense which formed the basis for the defendant's conviction. 
Hughey v. United States, 495 U.S. 411, 414 (1990) (restitution may
be ordered only for loss caused by one count of unauthorized use of
credit card to which defendant plead guilty; not for three
remaining counts in the indictment).
 In response, Congress amended the VWPA to provide that a
defendant is liable for restitution to:
 a person directly and proximately harmed as a
 result of the commission of an offense for
 which restitution may be ordered including, in
 the case of an offense that involves as an
 element a scheme, conspiracy, or pattern of
 criminal activity, any person directly harmed
 by the defendant's criminal conduct in the
 course of the scheme, conspiracy, or pattern.

18 U.S.C. 3663(a)(2)(Supp. III 1997). With the 1990 amendment,
Congress broadened the scope of restitution from losses
attributable solely to the offense of conviction to all losses
caused in the course of a defendant's criminal conduct, whether the
defendant is convicted of each of those offenses or not. United
States v. Hensley, 91 F.3d 274, 276 (1st Cir. 1996).
 Collins agrees that Congress broadened the scope of
restitution from offenses of conviction to all offenses involved in
a prosecution. He contends, however, that Congress did not intend
to broaden the scope of restitution from the conduct of the
defendant to the conduct of others. He argues that the amendment's
reference to the harm "directly" caused by the defendant's criminal
conduct is language of limitation, intended to proscribe liability
for the conduct of others, even if they are co-conspirators. 
Although he cites no authority for this proposition, he argues that
the plain meaning and principles of leniency require this
interpretation.
 We disagree. The Fourth and Tenth Circuits have
specifically rejected this interpretation of the amendment's
"directly harmed" language. United States v. Nichols, 169 F.3d
1255 (10th Cir. 1999); United States v. Plumley, 993 F.2d 1140 (4th
Cir. 1993). In Plumley, the Fourth Circuit rejected the
defendant's argument that she did not "directly harm" a robbed bank
as required by the 1990 amendment because she only drove the
getaway car. The court reasoned that:
 Nothing in the plain language of 3663(a)(2)
 or its legislative history suggests that
 3663(a)(2) usurps the settled principle that
 a criminal defendant who participates in a
 conspiracy is liable in restitution for all
 losses flowing from that conspiracy.

993 F.2d at 1142 n.2.
 Relying on Plumley, the Tenth Circuit rejected a similar
argument that the "directly harmed" language precludes restitution
if the harm is caused by a co-conspirator. Nichols, 169 F.3d at
1278. In that case, Nichols contended that the district court
could not order him to pay restitution to the General Services
Administration for the bombing destruction of the Murrah building
in Oklahoma City because he did not place and detonate the bomb. 
He specifically argued that prior cases holding a co-conspirator
liable for all the reasonably foreseeable losses caused by a
conspiracy were not controlling because they do not address the
1990 amendments to the VWPA.
 In upholding the district court's restitution order, the
Tenth Circuit rejected this argument, noting that the "directly
harmed" language in the 1990 amendments does not change the settled
rule that "losses caused by the entire conspiracy, not just losses
caused by those acts committed by the defendant, can be attributed
to the defendant when the district court orders restitution." Id.
(citing United States v. Brewer, 983 F.2d 181, 185 (10th Cir.
1993)).
 We have previously held that each conspirator may be
ordered to pay restitution for all the reasonably foreseeable
losses caused by any conspirator in the course of the conspiracy. 
United States v. Royal, 100 F.3d 1019, 1032 (1st Cir. 1996). In
Royal, the defendant was convicted of mail fraud and conspiracy to
commit mail fraud and ordered to pay restitution in an amount
greater than the sum of the four fraudulent loan checks he actually
mailed. In upholding the restitution order, we said:
 In the sentencing context, one convicted of
 conspiracy may be held liable for the acts of
 his co-conspirators in furtherance of the
 conspiracy that are reasonably foreseeable .
 . . . Thus, the district court may order
 Royal to pay restitution not only for an
 amount equivalent to the four student loan
 checks involved in the mail fraud counts, but
 also for any other reasonably foreseeable loss
 caused by Royal or his co-conspirators acting
 in furtherance of this conspiracy.

Id. (emphasis added). The 1990 amendments to the VWPA did nothing
to change this result. See United States v. Davis, 117 F.3d 459
(11th Cir. 1997)(not plain error to award restitution on each
member in conspiracy based on the acts of all); United States v.
Lewis, 104 F.3d 690, 693 (5th Cir. 1996) (defendant responsible for
entire amount of loss caused by conspiracy regardless of whether he
personally participated in each illegal transaction); United States
v. Chaney, 964 F.2d 437 (5th Cir. 1992) (permitting Pinkerton
liability with regard to restitution where defendant's conduct was
part of a conspiracy and inextricably related to the losses
suffered). Contrary to Collins' theory, the amendments merely
reaffirmed that Congress intends the Act to permit the federal
courts to order full restitution to all victims of a criminal
course of conduct.
 Collins distinguishes the authority cited above by
arguing that these orders of restitution were upheld because they
were imposed on defendants who played "major roles" in their
conspiracies. We can find no support for this argument in any of
the cases cited above, the language of the statute, or the
legislative history. In the context of a conspiracy, it is clear
that a defendant is liable in restitution to all the victims of the
reasonably foreseeable acts of his co-conspirators. No court has
ever held to the contrary.
 III.
 A defendant in a conspiracy is liable for all the
reasonably foreseeable loss caused to the victims of the
conspiracy. Accordingly, the order of restitution in this case is
AFFIRMED.