**United States Court of Appeals**
**Fifth Circuit**

**F I L E D**

**December 15, 2003**

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

No. 03-30390

_____

United States of America,

Plaintiff - Appellee,

v.

Richard D. O'Neal,

Defendant - Appellant.

_____

Appeal from the United States District Court
for the Western District of Louisiana, Alexandria
District Court No. 02-CR-10001-1

_____

Before DEMOSS, DENNIS and PRADO, Circuit Judges.[1]

PER CURIAM.

Mr. O'Neal was indicted on nine counts resulting from his conduct during bankruptcy proceedings. These counts charged him with the transfer and concealment of property and assets during bankruptcy (Counts 1, 2, 4, 6 and 8); money laundering (Counts 3 and 7); the making of false declarations, certifications, and

---

[1]Pursuant to 5th Cir. R. 47.5, this Court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Cir. R. 47.5.4.

-1-

statements during bankruptcy (Count 5); and the making of false statements during a court proceeding (Count 9).

Mr. O'Neal pleaded guilty to Counts 5 and 9 in exchange for waiver of the remaining counts. The district court ordered Mr. O'Neal to pay restitution of $163,460.00. On appeal, Mr. O'Neal challenges the amount of restitution and the restitution payment schedule ordered by the district court.

**Factual Background**

Mr. O'Neal and his ex-wife, Helen O'Neal[2], worked in the scrap business and operated as O'Neal Salvage. In November 1996, the two filed a Chapter 13 bankruptcy petition in the Bankruptcy Court for the Western District of Louisiana. That petition was dismissed on January 22, 1997. On January 28, 1997, the couple filed a voluntary bankruptcy petition under Chapter 11 in the same court. During the bankruptcy proceedings the couple established a debtor in possession ("DIP") account at Evangeline State Bank. In October 1997, Mr. O'Neal opened a separate account with his nephew, Brian Corley, under the name "Black River Trading Company" at the Catahoula-LaSalle Bank in Jonesville, Louisiana ("Black River account"). Mr. O'Neal did not inform the bankruptcy trustee or his creditors of the Black River account.

---

[2]The couple was married during the beginning of bankruptcy proceedings but was divorced by 1999. Charges were also brought against Helen O'Neal but were later dismissed.

Before beginning bankruptcy proceedings, Mr. O'Neal owned a Komatsu PC300 excavator valued at $140,000.00, and insured by Travelers Insurance Company. The excavator secured a debt of $191,000.00 that Mr. O'Neal owed to KDC Financial. When the excavator was destroyed in a sink hole, Travelers Insurance mistakenly reimbursed Mr. O'Neal $88,250.00 when it should have paid the secured creditor, KDC Financial, directly. Mr. O'Neal eventually paid $40,000.00 to KDC Financial, but he retained the remaining insurance proceeds of $48,250.00. Mr. O'Neal later sold the excavator for $42,460.00 plus $25,500.00 worth of other equipment. The retained insurance proceeds and the earnings on the scrap sale were not turned over to KDC Financial, or disclosed to the bankruptcy trustee. In bankruptcy court proceedings, Mr. O'Neal denied having received anything other than two late-model trucks in exchange for the excavator.

Mr. O'Neal also failed to disclose that he had insured an Al-Jon bailer that was owned by his son. When the bailer was destroyed in a fire, Mr. O'Neal received $68,500.00 in insurance proceeds. Mr. O'Neal retained $20,500.00 of those proceeds, using the rest to pay off an outstanding loan on the bailer. Mr. O'Neal then sold the bailer for $10,000.00. Mr. O'Neal did not report the insurance proceeds or the scrap metal proceeds in his bankruptcy report. After his conviction, but before sentencing, Mr. O'Neal badly burned his hands while working on a vehicle.

**Sentencing**

Mr. O'Neal pleaded guilty to Counts 5 and 9 of the indictment against him. Count 5 alleged that Mr. O'Neal "did knowingly and fraudulently make a false declaration, certification, verification and false statement, made under penalty of perjury," and specified that he "did not note either his ownership of a 1993 Ranger boat or his ownership of a 1996 Ford Mustang, all in violation of 18 U.S.C. § 152(3)." Count 9 alleged that, at a hearing on a Motion to Dismiss, Mr. O'Neal "did knowingly and fraudulently make a false statement under penalty of perjury," and specified that he falsely stated "that (1) he traded scrap collateral (Komatsu PC300 excavator) for two trucks and (2) that he purchased two trucks, a 1982 Kenilworth and a 1970 International F2000D, for the scrap of the PC 300, all in violation of 18 U.S.C. § 153 (3)." In pleading guilty to Counts 5 and 9, Mr. O'Neal's signed an agreement that read: "in addition to the penalties set forth in the preceding paragraphs, the Court may order him to make restitution to the creditors who were victims of the bankruptcy fraud alleged in the indictment and that the amount of restitution and method of payment is in the discretion of the Court."

The district court ordered the Probation Office to conduct a pre-sentence investigation report of Mr. O'Neal. The report showed Mr. O'Neal had a net income of $40.00 per month. In

-4-

addition, the Probation Office calculated that Mr. O'Neal's conduct had caused his creditors to lose $163,460.00. This sum included proceeds Mr. O'Neal had earned from the sale of the 1993 Ranger boat and the 1966 Ford Mustang mentioned in Count 5. The sum also included the insurance proceeds and salvage sale earnings from the excavator and the bailer.

Mr. O'Neal was sentenced to 15 months incarceration and ordered to immediately pay $200.00 to the Crime Victims Fund. The district court also assessed a fine of $4,000.00 and restitution of $163,460.00. The district court specified that beginning within 30 days of his release Mr. O'Neal would be required to pay $136.00 per month on the fine and $4,807.00 per month on the restitution. Mr. O'Neal was given a supervised release period of 36 months.[3]

**Standard of Review**

If a restitution order is permitted by law, the propriety of the particular award is reviewed for abuse of discretion. *United States v. Reese*, 998 F.2d 1275, 1280 (5th Cir. 1993). The factual findings underlying the award are reviewed for clear error. *United States v. Cihak*, 137 F.3d 252, 263 (5th Cir. 1998). If a defendant fails to timely object to a restitution award at sentencing, the underlying factual findings are reviewed

---

[3]If Mr. O'Neal begins these payments within 30 days of his release, and pays the full amount each time, he will complete the restitution payment in the 35th month of his supervised release.

for plain error, rather than for clear error. *United States v. Olano*, 507 U.S. 725, 732 (1993); and FED. R. CRIM. P. 52(b). Plain error exists where there is error, the error is plain, and the error affects substantial rights. *Olano*, 507 U.S. at 732. If plain error is found, this Court has discretion to decide whether to correct that error. *United States v. Vital*, 68 F.3d 114, 119 (5th Cir. 1995) (finding correction appropriate where a failure to correct would seriously affect the "fairness, integrity, or public reputation of judicial proceedings").

This Court will only reverse a district court's restitution order if the appellant demonstrates that it "is probable that the district court failed to consider one of the mandatory factors and the failure to consider that factor influenced the court." *United States v. Schinell*, 80 F.3d 1064, 1070 (5th Cir. 1996).

**Amount of Restitution**

Mr. O'Neal does not object to the fact that restitution was ordered. Instead, he contends that the amount of that restitution violated the guidelines of the Victim and Witness Protection Act, 18 U.S.C. §§ 3663-3664. ("VWPA"). He argues that the insurance and sale proceeds from the bailer, and the salvage proceeds from the excavator, should not have been included in his restitution because they were not losses suffered by victims of the crimes of which he was convicted. He contends that the total

restitution should have been, at most, $59,210.00,[4] which would have qualified him for a lesser sentence under the Sentencing Guidelines. Because Mr. O'Neal did not timely object to the amount of his restitution order, this Court reviews the district court's factual findings underlying that award for plain error. *See Olano*, 507 U.S. at 732.

Under the VWPA, courts may order convicted defendants to compensate their victims for any losses that resulted from the defendants' crimes. A victim of a defendant's crimes is defined as "a person directly and proximately harmed as a result of the commission of an offense . . ." 18 U.S.C. § 3663A(a)(2). Creditors, trustees and investors are considered victims of bankruptcy fraud for purposes of restitution. *United States v. Cluck*, 143 F.3d 174, 180 (5th Cir. 1998); *United States v. Dahlstrom*, 180 F.3d 677, 686 (5th Cir. 1999). Courts may also order restitution in a criminal case "to the extent agreed to by the parties in a plea agreement." 18 U.S.C. § 3663(a)(3).

Additionally, the VWPA includes in the category of compensable victims, anyone directly harmed by the defendant's criminal conduct in the course of a scheme, conspiracy, or pattern, where the defendant's offense involved as an element a

---

[4]Mr. O'Neal calculated this figure by adding the $11,500.00 he earned from the sale of the Ranger boat, the $5,250.00 he earned from the sale of the Ford Mustang; and the $42,460.00 he retained from the insurance proceeds he received for the excavator.

scheme, conspiracy, or pattern of criminal activity.  *See id.*
This Court has held that "where a fraudulent scheme is an element
of the conviction, the court may award restitution for 'actions
pursuant to that scheme.'" *United States v. Cothran*, 302 F.3d
279, 289 (5th Cir. 2002) (quoting *United States v. Stouffer*, 986
F.2d 916, 928 (5th Cir. 1993)).  In order to determine which of a
defendant's actions are actions pursuant to a scheme of conduct,
courts must focus on the actions alleged in the indictment and
their temporal scope.  *Id.*

Before even reaching the extent of any scheme by Mr. O'Neal,
this Court can dispose of Mr. O'Neal's claim that the insurance
proceeds from the excavator should not have been included in his
restitution.  Count 1 of the indictment against Mr. O'Neal
alleged that he knowingly and fraudulently transferred the
$48,250.00 in insurance proceeds from the excavator.  In his plea
agreement, Mr. O'Neal agreed to pay restitution for all of the
offenses charged in the indictment, not merely those to which he
pleaded guilty.  Mr. O'Neal's creditors, who are represented by
the U.S. Bankruptcy Trustee, lost money because of Mr. O'Neal's
fraudulent conduct, and were therefore direct and proximate
victims of his conduct.  *See Cluck*, 143 F.3d at 180.  The
$48,250.00 was properly included in Mr. O'Neal's restitution
because it was a restitution payment to which he had agreed in
his plea agreement.  *See* 18 U.S.C. § 3663(a)(3).  This Court

finds no error in the district court's inclusion of that sum in Mr. O'Neal's restitution.

Mr. O'Neal's earnings from the bailer, however, were not mentioned in the indictment, and therefore require a different analysis. Mr. O'Neal argues that he had no obligation to declare proceeds from the bailer because he did not technically own it. However, Mr. O'Neal gained income from his conduct regarding the bailer. He was required by the bankruptcy court to disclose all of his earnings and income, whether derived from property he owned or not. The charges in the indictment against Mr. O'Neal, taken together, describe a scheme of bankruptcy fraud between November 12, 1997 and August 28, 1998. During this time, Mr. O'Neal hid profits and insurance proceeds from the U.S. Bankruptcy Trustee, and lied during bankruptcy proceedings about having done so. Mr. O'Neal's relevant conduct regarding the bailer took place in November and December of 1997, well within the time period of the other conduct alleged in the indictment. Furthermore, Mr. O'Neal also fraudulently hid these resources from the U.S. Bankruptcy Trustee. His failure to declare profits from the bailer can easily be seen as an action pursuant to a scheme of bankruptcy fraud. *See Cothran*, 302 F.3d at 289. Therefore, the district court did not err by including those proceeds in the restitution order. *See id.*

**Restitution Payment Schedule**

Mr. O'Neal contends that the district court erred by not considering his financial situation when it created his restitution payment schedule. The following factors are to be considered in determining a restitution payment schedule: 1) the financial resources and other assets of the defendant, including whether any of these assets are jointly controlled; 2) projected earnings and other income of the defendant; and 3) any financial obligations of the defendant, including obligations to dependants. 18 U.S.C. § 3664(f)(2). A district court's restitution payment schedule will only be reversed if the appellant demonstrates "that is probable that the district court failed to consider one of the mandatory factors and the failure to consider that factor influenced the court." *United States v. Schinnell*, 80 F.3d 1064, 1070 (5th Cir. 1996). In addition to considering a defendant's financial situation at the time of sentencing, this Court has noted the importance of 18 U.S.C. § 3664(k), which allows a district court to adjust its payment schedule if defendant's earnings turn out be insufficient to meet the payments. *United States v. Caldwell*, 302 F.3d 399, 420-421 (5th Cir. 2002).

In this case, the district court ordered a Pre-Sentence Investigation into Mr. O'Neal's financial situation. In light of that report, the district court ordered that Mr. O'Neal would not be required to pay interest on the restitution. This decision

shows that the district court considered Mr. O'Neal's financial situation.

Mr. O'Neal asserts that the payment schedule will be impossible for him to meet, especially considering the burn injuries he sustained. However, he makes no showing that the district court failed to consider one of the mandatory financial factors in ordering the payment schedule. Although Mr. O'Neal's earnings were low at the time of sentencing and he had no assets, he had supported himself in the past, and was without any debts or dependents. This Court finds no error in the district court's payment schedule order. *See Schinell*, 80 F.3d at 1070.

If, upon Mr. O'Neal's release, he is unable to meet the payment schedule, the district court can alter that schedule pursuant to 18 U.S.C. § 3664(k). *See Caldwell*, 302 F.2d at 420–420.

This Court AFFIRMS the judgment of the district court.